# PINNACLE CONSTRUCTION, INC.

September 21, 2004
2410 Azurite Ct., Suite B
Anchorage, AK 99507
Ph 907-522-0040

JOB #2004-70                                SUBCONTRACT                                PHASE # 16000

This agreement was made and entered into by and between Pinnacle Construction, Inc., hereinafter called the Contractor, and Marshall's Electric, Inc., 1621 E. 64th Ave., Anchorage, AK 99507, hereinafter called the Subcontractor. Witnesseth: The Contractor, for the full, complete and faithful performance of this Subcontract, agrees to pay the Subcontractor:

(a) Lump Sum in the amount of Five hundred sixty six thousand two hundred twenty five dollars and no cents ($566,225.00).

In consideration therefore, the Subcontractor agrees as follows:

1. To furnish and perform all work as listed below and in Exhibit "A", which is attached, for the construction of the AAFES Mini Mall/Food/Gas at Fort Richardson Army Base, Alaska, AAFES Contract Number HQ 04-REZC-063, for Army & Airforce Exchange Service, 3911 S. Walton Walker Blvd., Dallas, TX 75236, hereinafter called Owner, in accordance with the Contract dated the 10th day of August, 2004 between the Owner and the Contractor, and the general provisions and special conditions of said Contract, and in accordance with the drawings and specifications and addenda for said construction by Koonce Pfeffer Bettis, Inc/Architect and Morris and Associates, all of which documents in their entirety are hereinafter referred to as the Main Contract and which have been made and remain available for Subcontractor review in the Contractor's office located at 2410 Azurite Court, Suite B, Anchorage, AK 99507.

2. To be bound by all laws, government regulations and orders, and all provisions of the Main Contract insofar as they pertain to the performance of the work, which provisions are incorporated by reference and to be bound by the provisions printed herein.

3. To provide all supervision, materials, labor, supplies, tools and equipment as necessary to fully perform including but not limited to: Electrical, Bathroom terminations and equipment supplied by others as listed in drawings and specifications. All work to be completed as per plans and specifications including, but not limited to section (s), Division 1 General Requirements, Division 16 Electrical, drawings dated 6/10/2004 and Amendment 1 dated 7/23/2004, prepared by Koonce Pfeffer Bettis, Inc. and Morris and Associates (Architect / Engineer).

See Exhibit "A"

A. **OBLIGATIONS AND RESPONSIBILITIES**
It is agreed that the Subcontractor will assume toward the Contractor all obligations and responsibilities which the Contractor has assumed toward the Owner under the Main Contract. In case of conflict between the terms of the obligations and the responsibilities of the parties of this Subcontract and the Main Contract, the Subcontract shall control. The Subcontractor agrees not to assign or subcontract a substantial portion of the performance of this Subcontract without the prior written consent of the Contractor. Subcontractor shall designate in writing all known key Subcontractors and Suppliers to Contractor and shall not subsequently change them without Contractor's prior approval.

B. **DRAWINGS AND SUBMITTALS**
Subcontractor agrees to furnish drawings, specifications and final selection of materials and other specified items for approval by Owner and Owner's agent so as not to delay progress of work. Provide a minimum of eight (8) of each submittal plus the number of copies to be returned to subcontractor. Final payment will be held until all submittals, including O&M manuals, and "As Built" drawings, have been submitted and approved by Owner or Owner's agent.

C. **SCHEDULING**
1. Contractor shall give Subcontractor advance notice of anticipated starting date for Subcontract work. Subcontractor shall start work on the date named by the Contractor, and will complete the several portions and the whole of the work herein called, in such times as will enable the Contractor to fully comply with the Main Contract. Subcontractor shall cooperate with Contractor and other Subcontractors. The Subcontractor will be bound by any provisions in the Main Contract for liquidated damages, and shall pay such damages for any delay to the extent caused by Subcontractor.

2. In addition to any such sums that Subcontractor shall be required to pay to Contractor by reason of reimbursement of liquidated damages payable to Owner, should Subcontractor fail to complete his work in a timely manner or otherwise delay the progress of the work, Subcontractor shall pay such actual costs as may be incurred by Contractor (including any additional financing costs), by reason of such delay.

3. In lieu of said damages, Subcontractor agrees that for each calendar day of delay caused by the acts or omissions of Subcontractor, Subcontractor shall be assessed the sum of (N/A) as liquidated and agreed damages to Contractor to cover the costs of said delay.

4. No work to occur on Saturday.

D. **PAYMENTS** (initial)  CG
Subcontractor shall submit to the Contractor "Application for Payment", at the Contractor's business office, properly notarized and executed by the twenty fifth (25th) of the month for all work performed that respective month approved through the end of the month, to enable the Contractor to timely apply for and obtain payment from the Owner. Subcontractor shall be paid for work performed, as approved by the Contractor, within ten (10) calendar days of receipt of payment from owner. All "Applications for Payment" received at the contractor's business office after the twenty-fifth (25th) are late and will not be billed until the twenty-fifth (25th) of the following month. Facsimile "Application for Payment" forms will not be accepted. Contractor shall withhold retainage from the Subcontractor at the rate of ten percent (10%), together with such further adjustments as may apply by terms of Paragraph "C" supra. Payment for said retainage shall be made within ten (10) working days after receipt of retainage payment from Owner to Contractor. The Contractor's obligation to release retention to the Subcontractor shall be subject to proof that there are no unpaid claims which would provide the basis of a lien against the premises, execution or payment bond, or subject to (1) withholding of sufficient funds, or (2) furnishing an adequate and sufficient payment and performance bond. Progress payments shall be deemed advances and are subject to adjustment at any time prior to final payment for any overpayment, or Contractor's good faith determination that the remaining balance of payments may be insufficient to insure completion of the Subcontract work in accordance with the terms, conditions, or bond claims. If the contract between Owner and Contractor permits payment for materials delivered to the job site, or to satisfactory storage facilities, Subcontractor may invoice for materials so delivered and receive payment therefore to the extent Prime Contract is paid. Subcontractor shall be responsible for material as described in paragraph "F" materials, provided, however, that Subcontractor shall notify the Contractor of the arrangement and shall require the acceptance by Assignee of the terms of this Subcontract, including the obligation for adjustments and return to Contractor of overpayment.

Subcontractor acknowledges receipt of contractors form titled "Subcontractors Application for Payment" (s)  CG

E. **CLAIMS**
Partial payments for work performed under this agreement will equal the value of the work done by the Subcontractor at the agreed price, less the sum of previous payments and less a retained percentage as provided in Paragraph "D" above. Provided, that if the Subcontractor is indebted to the Contractor or anyone else for labor, wages, taxes, supplies, materials, equipment, rental or proper charges against the work covered by the Subcontract Agreement, the amount of such indebtedness may be deducted by the Contractor. Contractor may, from time to time, request that Subcontractor shall promptly provide a statement in writing setting forth what amounts, if any, are due or payable by Subcontractor to third parties for labor, wages, taxes, materials, equipment, or supplies in connection with or arising out of the performance of the Subcontract, and the Contractor may withhold from any payment, partial or final, otherwise due under this Subcontract, such sums as the Contractor reasonably may determine are necessary to prevent and protect the Contractor or the Owner from claims or liens that may be asserted by said third parties.

In the event suit or action is instituted to enforce any terms of this agreement, including any and all bankruptcy claims, actions and proceedings, the prevailing party shall be entitled to recover reasonable attorney fees and expenses, including but not limited to fees for searching records, obtaining title reports, and those incurred in appellate proceedings.

F. **CHANGE ORDERS**
The Contractor may, without invalidating this Subcontract, order in writing extra work or make changes by altering, adding to, or deducting from the work and the Subcontract price will be adjusted accordingly. All such work shall be executed under the conditions hereof and of the Main Contract, except that any claim for extension of time caused thereby must be agreed upon at the time of ordering such change. The Subcontractor shall have no claim for extras unless the same shall be agreed upon in writing by the Contractor's Project Manager prior to the performance of any such extra work. Payment for same shall be made within ten (10) calendar days of receipt of payment from Owner to Contractor. In case of any disputes over the adjustment of the cost, Subcontractor shall proceed with the work, and the dispute shall be resolved in accordance with the procedure set forth in the Main Contract to the extent that the Contractor is bound by such procedure.

G. **NATURE OF WORK**
Subcontractor has satisfied himself as to the nature and location of the work, the character, quantity, and kind of material to be encountered, the character, kind, and quality of equipment needed during the prosecution of the work, the location, conditions, and other matters which may in any manner affect the work under this Subcontract agreement, and acknowledges that Subcontractor has had a reasonable opportunity to examine the site, all of the Main Contract documents and Subcontractor's proposal sufficiently to so satisfy himself.

H. **SUBCONTRACTOR EMPLOYEES**
Subcontractor has the status of an employer as defined by the Industrial Insurance, Worker's Compensation Act, Social Security, and other similar acts of the federal, state and local Government. Subcontractor will withhold from its payroll the applicable Social Security taxes, Worker's Compensation, Unemployment Compensation contributions and withholding taxes and pay the same. The Contractor shall in no way be liable as an employer on account of any of the employees of the Subcontractor. Before final payment is made upon this Subcontract, Subcontractor shall furnish satisfactory evidence to the Contractor that he has conformed to said laws, rules and regulations and the Subcontractor hereby agrees to indemnify the Contractor for any and all liability under such laws arising from the work performed under this Subcontract Agreement.

Exh. A
P. 1 of 3

### PERMITS, TAXES

The Subcontractor shall secure and pay for all permits, fees and licenses necessary for the performance of the Subcontract and shall pay any and all federal, state and municipal taxes, including sales tax, if any, for which the Subcontractor may be liable in carrying on the Subcontract.

### J. MATERIALS

Materials delivered by or for the Subcontract and intended to be incorporated into the construction hereunder shall remain on the job site and shall become the property of the Owner upon delivery; but the Subcontractor may repossess himself of any surplus remaining at the completion of the contract. All scaffolding, apparatus, ways, works, machinery, and plant brought upon the premises by the Subcontractor shall remain his property, but in case of inability to perform and the completion of the work, as done by the Contractor, the Contractor shall be entitled to use the said scaffolding, apparatus, ways, works, machinery and plant without cost or liability for depreciation or damage by use and without prejudice to Contractor's other rights or remedies for any damage or loss sustained by reason of said inability. It shall be the Subcontractor's responsibility to unload, store, and protect his materials, and the Subcontractor shall bear the risk of loss thereof, and shall protect such material against loss until actually incorporated into the work and the work accepted, even though title thereto may previously have passed to the Owner under the preceding provisions.

### K. TAKEOVER

Subcontractor shall commence and at all times carry on, perform and complete the subcontract to the full and complete satisfaction of the Contractor and of the Architect/Engineer or Owner. It is specifically understood and agreed that in the event that the Contractor shall at any time determine that the Subcontractor is not proceeding with diligence and in such a manner as to satisfactorily complete the work within the required time, or if the Subcontractor shall fail to correct, replace or re-execute faulty or defective work done or materials hereunder under this Subcontract as required by the Contractor, then and in that event the Contractor shall have the right after a five (5) calendar days notice confirmed in writing, to take over the work and to complete the same at the cost and expense of the Subcontractor, without prejudice to the Contractor's other rights or remedies for any loss or damage sustained. In the event of an emergency involving risk of loss or injury to person or property, acting prior to an actual takeover, Contractor may take appropriate action to mitigate such emergency and may charge Subcontractor for all costs incurred in such mitigation. Previous demands made on Subcontractor not followed by a takeover shall not be deemed a waiver of Contractor's right to do so.

### L. UNIT PRICE

In the event the contract contains unit price items it is understood and agreed that any quantities mentioned are approximate only and subject to change as required by the Main Contract and as ordered and directed by the Contractor.

### M. MATERIAL QUALITY

Materials condemned by the Contractor, Architect/Engineer or Owner as failing to conform to the Main Contract, worked or not, shall upon notice from the Contractor, be immediately removed by the Subcontractor. Failure of the Contractor to immediately condemn any work or materials as supplied shall not in any way waive the Contractor's right to object thereto at any subsequent time.

### N. JOB DAMAGE

Job damage caused by Subcontractor on work other than his own shall be repaired immediately by Contractor, and Subcontractor shall be responsible for its repair. In the event of Subcontractor's failure to promptly repair (or to make adequate provision for the same) so as not to delay the progress of the work, Contractor may take such actions as are permitted under Paragraph "K", above.

### O. HOUSEKEEPING

Subcontractor shall regularly and promptly remove all refuse, waste and debris produced by his operation. Refuse shall not be permitted to accumulate to the extent that it interferes with free access to the work site. Compliance with all safety requirements is an essential part of Subcontractor's obligation. In the event of Subcontractor's failure after notification or refusal to meet these requirements, refuse removal may be done by Contractor and charged against the account of Subcontractor.

### P. BOND

Subcontractor shall furnish to the Contractor, unless waived by the Contractor, a performance and payment bond acceptable to the Contractor in an amount equal to the contract price, conditioned on and covering the faithful performance of, and compliance with, all the terms, provisions, and conditions of this contract, and payment for all labor, materials, equipment and supplies used in the execution of the work provided herein. Subcontractor's default: In the event of said default, Contractor shall be entitled to those remedies as set forth in Paragraph "K", above.

### Q. WORKER'S COMPENSATION

Subcontractor shall furnish to Contractor evidence that he has in force Worker's Compensation Insurance, including Employer's Liability, as may be required by the jurisdiction or jurisdictions in which the work is being performed. Where applicable, this shall include United States Longshoremen's and Harbor Worker's Act Insurance, including Coverage B (Employer's Liability) with limits not less than the Bodily Injury limits required by the General Conditions of the Specifications but in no event less than $100,000.00. Such evidence of insurance may be in the form of an Insurance Certificate issued by an insurer satisfactory to the Contractor and shall provide for not less than thirty (30) days notice to Contractor of cancellation or reduction of coverage. In the event Subcontractor fails to maintain any insurance required by this Subcontract in force during the entire life of this Subcontract, Contractor may at his option purchase such insurance in the name of Subcontractor and deduct the cost of same from payments due Subcontractor.

### R. INSURANCE (Initial) _____

Subcontractor shall obtain and keep in force during the term of the contract public liability and property damage insurance with coverage equal to, or greater than, the minimum specified in the Main Contract. The Subcontractor shall furnish to the Contractor evidence of this insurance as in the same form as described in Paragraph "R" and name the Contractor as an additional insured. Such insurance indicates that it includes contractual liability coverage applicable to the indemnity provisions of this Subcontract. The Subcontractor shall give Contractor thirty (30) days notice of any cancellation. Failure to timely furnish said insurance, or its cancellation prior to final acceptance by Owner, shall be deemed a material breach by Subcontractor entitling Contractor to unequivocally terminate, after five (5) calendar days notice, this Subcontract for default. In the event of said default, Contractor shall be entitled to those remedies as set forth in Paragraph "K", above.

### S. SUB-TIER CONTRACTORS

Any Sub-Tier Contractor shall be bound to the Contractor in like manner as the Contractor is bound to the Owner.

### T. MODIFICATIONS

No modification of this agreement and no waiver of rights under this agreement shall be valid or binding on the parties unless the same be in writing. Failure of the Contractor to insist upon strict performance of the Subcontract, or to exercise any option herein conferred in any one or more instances, shall not be construed to be a waiver of any such, or any other, covenants or agreements, but the same shall be and remain in full force and effect.

### U. USE OF INTOXICANTS

Subcontractor agrees that none of his employees shall use, during the time they are on or about the premises or location of the work, any alcoholic beverages, drugs or other intoxicants. Any violation of this paragraph shall be cause for termination of Subcontractor's Contract. Subcontractor acknowledges that this provision is included and specifically bargained for in order to protect Contractor's reputation with the public for quality workmanship and to further protect both Contractor and Subcontractor from any public and/or private liability that may arise from such use.

IN WITNESS WHEREOF THE CONTRACTOR and SUBCONTRACTOR have executed this agreement, effective the September 11, 2004.

11-8-04                                        10-25-04
DATE                                             DATE

                          COPY

14830
Contractor Registration No.                     Subcontractor Registration No.

By _Matthew Hartman_____                        By _____
   Authorized Signature of Contractor              Authorized Signature of Subcontractor

_Marlene Stengel_____                           JURAT
   Witness
                                                State of _Alaska_
                                                County of _Anchorage_

                                                Subscribed and sworn to before me this 25th day of October,
                                                2004, by _____

                                                _____
                                                Notary Public
State of Alaska                                 My Commission Expires: 6/18/04
Notary Public
DIANE WALL

Exh. A
P. 2 OF 3

Marshall's Electric, Inc. (Subcontractor) hereby agrees to defend, indemnify and hold Pinnacle Construction, Inc. (Contractor) harmless from any and all claims, demands, losses and liabilities to or by third parties arising from its agents or employees to the fullest extent permitted by law and subject to the limitations provided below.

Subcontractor's duty to indemnify Contractor for liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the concurrent negligence of Contractor or Contractor's agents or employees, and Subcontractor or Subcontractor's agents or employees, shall apply only to the extent of negligence of Subcontractor or Subcontractor's agents or employees.

Subcontractor specifically and expressly waives any immunity that may be granted to it under the Alaska Statutes. Furthermore, the indemnification obligation under this Subcontract shall not be limited in any way by any limitation on the amount or type of damage, compensation or benefits payable to or for any third party under Worker's Compensation acts, Disability Benefits acts, or other employee benefits acts.

Subcontractor's duty to defend, indemnify and hold Contractor harmless shall include, but not be limited to, all claims, demands, losses and liability to which it applies, Contractor's personnel-related costs, reasonable attorney's fees, court costs and all other claim-related expenses.

THE UNDERSIGNED HEREBY CERTIFY THAT THIS ADDENDUM WAS MUTUALLY NEGOTIATED

Dated: 11-8-04                                    Dated: 10-25-04
Company: Pinnacle Construction, Inc.              Company: Marshall's Electric, Inc.
Signature: Matthew Hartman                        Signature: [signature]

**EXHIBIT "A"**

1. To the Contract between Pinnacle Construction, Inc. and Marshall's Electric, Inc. dated September 21, 2004 for construction of AAFES Mini Mall/Food/Gas located at Fort Richardson, Alaska, AAFES Contract Number HQ 04-0822C-063.

2. Subcontractor shall provide all labor, materials, tools, equipment, services, layout and supervision necessary for, including but not limited to, Electrical, Exclusions: terminations and equipment supplied by others as listed in drawings and specifications. All work to be completed as per plans and specifications including, but not limited to sections (s), Division 1 General Requirements, Division 16 Electrical, drawings dated 6/30/2004, and Amendment 1 dated 7/23/2004, prepared by Koonce Pfeffer Bettis, Inc. and Morris and Associates (Architect / Engineer).

   To further clarify certain contract requirements, the following items are included in this agreement. (The following items do not supersede and / or modify the agreement and / or the main contract, but are intended to further clarify and / or simplify the subcontract agreement and the main contract requirements.)

   A. Before commencing work, the Subcontractor shall provide the Contractor with the appropriate insurance certificates referenced in Sections Q & R of the contract. In no case will payment be made without proper insurance certificates.

   B. "As-Built" drawings must be submitted by electrical, mechanical, and underground Subcontractors and warranties and operating manuals must be submitted by all Subcontractors providing equipment before those Subcontractors will receive final payment.

   C. Subcontractor shall assign a qualified foreman to this project. The foreman shall be on the job site whenever work is being performed under this contract, and the foreman shall not be replaced during the course of the job, without written consent of the Contractor.

   D. Subcontractor shall be responsible for unloading, hoisting, storage and protection of all his own materials, as well as materials supplied by others to be installed within the Subcontractor's Scope of Work.

   E. Subcontractor shall be responsible for daily and final clean-up and disposal of his debris. Contractor will provide a dumpster. After written notification, subcontractor will be back charged at a rate of $70.00 per hour for subcontractor debris that is cleaned up by Contractor.

   F. NO EXTRA WORK SHALL BE PERFORMED WITHOUT WRITTEN APPROVAL FROM THE CONTRACTOR.
   All changes or additions to the Scope of Work of this Subcontract required by local authorities (inspectors) must be in writing and signed by the inspector prior to submittal to the Contractor. For approval scheme, no verbal requests will be honored.

   G. All work is to be completed when directed by the Contractor's representative and in accordance with Contractor's schedule. It will be assumed that the schedule is acceptable unless the Contractor is notified in writing to the contrary within five (5) days of its receipt. The schedule is a working document and is subject to updates and modification.

   H. Assistance or guidance provided by representatives of the contractor will not relieve the Subcontractor of complete responsibility for compliance with the plans and specifications.

   I. Pinnacle Construction, Inc. must receive submittals in a timely manner so as not to cause any delays in the progress of the work. Allow fourteen (14) days for review and return on each submittal. The subcontractor shall coordinate all such submittals, and review them for accuracy, completeness, and compliance with the contractual requirements and shall indicate his approval thereon as evidence of such coordination and review. Submittals without such evidence of review and approval may be returned for resubmission. Submit a minimum of eight (8) copies for approval, the Owner will retain six copies, the contractor will retain two copies and remaining copies will be returned to subcontractor.

   J. Subcontractor shall guarantee his work for a period of one (1) year (unless a longer period is specified in the main contract documents) from the notice of completion filing date. Corrective work required during the warranty period shall be performed within one (1) week of notification that a problem exists.

   K. All work shall comply with local, state, and federal safety requirements.

   L. All work shall be performed to the satisfaction of the Contractor & Owner.

   M. If requested by the Contractor, the Subcontractor agrees to complete and sign a joint check agreement for any or all of its suppliers and subcontractors.

   N. All requests for payment must be submitted on the "Subcontractor's Application for Payment" form, and must be notarized.

   O. All Subcontractors and all lower tier Subcontractors agree to follow Contractor's Site Health and Safety Plan.

3. The general minimum coverage minimums required for this project are:

   Combined Single Limit for Bodily Injury and Property Damage Liability

   A.  General Liability          $1,000,000.00 Per Occurrence
   B.  Automobile Liability       $1,000,000.00 Per Accident
   C.  General Aggregate Limit    $2,000,000.00 Per Project

SUBCONTRACTOR acknowledgment of Exhibit "A":  [signature]
                                               Authorized Signature

Exh.
P. 3