ORIGINAL COPY

# PINNACLE CONSTRUCTION, INC.

June 4, 2004
2410 Azurite Ct., Suite B
Anchorage, AK 99507
Ph 907-522-0040

JOB # 2004-46                    SUBCONTRACT                    PHASE # 16050

This agreement was made and entered into by and between **Pinnacle Construction, Inc.**, hereinafter called the Contractor, and **Marshall's Electric, Inc., 3611 E66th Ave. Anchorage, Alaska 99507**, hereinafter called the Subcontractor. Witnesseth: The Contractor, for the full, complete and faithful performance of this Subcontract, agree to pay the Subcontractor:

(a) Lump Sum in the amount of: **One Hundred Sixty Three Thousand, Four Hundred Twenty Five Dollars ($163,425.00)**

b) Unit Prices as set forth below which, on the basis of estimated quantities, will involve a gross contract price of approximately (N/A).

In consideration therefore, the Subcontractor agrees as follows:

1. To furnish and perform all work as listed in Exhibit "A", which is attached, for the construction of the: **Fire Station #10 Rabbit Creek Project. For the Municipality of Anchorage,** hereinafter called Owner, in accordance with the Contract dated the **27th day of May, 2004** between the Owner, and the Contractor, and the general and special conditions of said Contract, and in accordance with the drawings and specifications and addenda 1 through 4 for said construction by **Rim Architects**, all of which documents in their entirety are hereinafter referred to as the Main Contract and which have been made and remain available to the Subcontractor.

2. To be bound by all laws, government regulations, and orders, and all provisions of the Main Contract insofar as they pertain to the performance of the work, which provisions are incorporated by reference and to be bound by the provisions printed herein.

3. To provide all supervision, materials, labor, supplies and equipment as necessary for including but not limited to: **Electrical Demolition, Site Electrical and New Electrical Construction**. All work to be completed as per plans and specifications including, but not limited to: **Specification Section 16000 and all Drawings listed on page 00003-5 of the Fire Station #10 Rabbit Creek Project Manual, drawings dated February 12, 2004. Drawn by: Rim Architects**.
See Exhibit "A"

A. **OBLIGATIONS AND RESPONSIBILITIES**
It is agreed that the Subcontractor will assume toward the Contractor all obligations and responsibilities which the Contractor has assumed toward the Owner under the Main Contract. In case of conflict between the terms of the obligation and the responsibilities of the parties of this Subcontract and the Main Contract, this Subcontract shall control. The Subcontractor agrees not to assign or subcontract a substantial portion of the performance of this Subcontract without the prior written consent of the Contractor. Subcontractor shall designate in writing all lower tier Subcontractors and Suppliers to Contractor and shall not subsequently change them without Contractor's prior approval

B. **DRAWINGS**
Subcontractor agrees to furnish drawings, specifications and final selection of materials and other specified items for approval by Owner and Owner's agent so as not to delay progress of work.

C. **SCHEDULING**
1. Contractor shall give Subcontractor advance notice of anticipated starting date for Subcontractor work. Subcontractor shall start work on the date named by the Contractor, and shall complete the several portions and the whole of the work herein sublet, at such times as will enable the Contractor to fully comply with the Main Contract. Subcontractor shall cooperate with Contractor and other Subcontractors. The Subcontractor will be bound by any provisions in the Main Contract for liquidated damages, and shall pay such damages for any delay to the extent caused by Subcontractor.

2. In addition to any such sums that Subcontractor shall be required to pay to Contractor by reason of reimbursements of liquidated damages payable to Owner, should Subcontractor fail to complete his work in a timely manner or otherwise delay the progress of the work, Subcontractor shall pay such actual costs as may be incurred by Contractor (including any additional financing costs), by reason of such delay.

3. In lieu of said damages, Subcontractor agrees that for each calendar day of delay caused by the acts or omissions of Subcontractor, Subcontractor shall be assessed the sum of **$600 per day for the living quarters Substantial Completion (Phase 1, August 27, 2004) and $700 per day for the overall project Substantial Completion (Phase 2, November 27, 2004)** as liquidated and agreed damages to Contractor to cover the costs of said delay.

4. No work to occur on Saturday's.

D. **PAYMENTS** (initial) _____
Subcontractor shall submit to the Contractor "Application for Payment", at the Contractors business office, properly notarized and executed by the twenty-fifth (25th) of the month, for all work performed that respective month projected through the end of the month, to enable the Contractor to timely apply for and obtain payment from the Owner. Subcontractor shall be paid for work performed, as approved by the Contractor, within seven (7) calendar days of receipt of payment from owner. All "Applications for Payment" received at the contractor's business office after the twenty-fifth (25th) are late and will not be billed until the twenty-fifth (25th) of the following month. Facsimile "Application for Payment" forms will not be accepted. Contractor shall withhold retainage from the Subcontractor at the rate of ten percent (10%), together with such further adjustments as may apply by virtue of Paragraph "C", supra. Payment for said retainage shall be made within ten (10) working days after receipt of retainage payment from Owner to Contractor. The Contractor's obligation to release retention to the Subcontractor shall be subject to proof that there are no unpaid claims which would provide the basis of a lien against the premises, retention or payment bond, or subject to (1) withholding of sufficient funds, or (2) furnishing an adequate and sufficient payment and performance bond. Progress payments shall be deemed advances and are subject to adjustment at any time prior to final payment for errors, overpayment, or Contractor's good faith determination that the remaining balance of payments may be insufficient to insure completion of the Subcontract work in accordance with its terms or to pay lien, retention, or bond claims. If the contract between Owner and Contractor permits payment for materials delivered to the job site, or to satisfactory storage facilities, Subcontractor may invoice for materials so delivered and receive payment therefor to the extent Prime Contractor is paid. Subcontractor shall be responsible for material as described in paragraph "J" materials, provided, however, that Subcontractor shall notify the Contractor of the assignment and shall require the acceptance by Assignee of the terms of this Subcontract, including the obligation for adjustments and return to Contractor of overpayment.

Subcontractor acknowledges receipt of contractors form titled "Subcontractors Application for Payment"(int.) _____

E. **CLAIMS**
Partial payments for work performed under this agreement will equal the value of the work done by the Subcontractor at the agreed price, less the sum of previous payments and less a retained percentage as provided in Paragraph "D" above; Provided, that if the Subcontractor is indebted in the Contractor or anyone else for labor, fringes, taxes, supplies, materials, equipment, rental or proper charges against the work covered by this Subcontract Agreement, the amount of such indebtedness may be deducted by the Contractor. Contractor may, from time to time, require (and Subcontractor shall promptly provide) a statement in writing setting forth what amounts, if any, are due or payable by Subcontractor to third parties for labor, fringes, taxes, materials, equipment, or supplies in connection with, or arising out of the performance of the Subcontract, and the Contractor may withhold from any payment, partial or final, otherwise due under this Subcontract, such sums as the Contractor reasonably may determine are necessary to secure and protect the Contractor or the Owner from claims or liens that may be asserted by said third parties.

In the event suit or action is instituted to enforce any terms of this agreement, including any and all bankruptcy claims, actions and proceedings, the prevailing party shall be entitled to recover reasonable attorneys' fees and expenses, including but not limited to fees for searching records, obtaining title reports, and those incurred in appellate proceedings.

F. **CHANGE ORDERS**
The Contractor may, without invalidating this Subcontract, order in writing extra work or make changes by altering, adding to, or deducting from the work and the Subcontract price shall be adjusted as agreed. All such work shall be executed under the conditions hereof and of the Main Contract, except that any claims for extension of time caused thereby must be agreed upon at the time of ordering such change. The Subcontractor shall make no claims for extras unless the same shall be agreed upon in writing by the Contractor Project Manager prior to the performance of any such extra work. Payment for same shall be made within the seven (7) calendar days of receipt of payment from Owner to Contractor. In case of any disputes over the adjustment of the cost, Subcontractor shall proceed with the work and the dispute shall be resolved in accordance with the procedures set forth in the Main Contract to the extent that the Contractor is bound by such procedures.

G. **NATURE OF WORK**
Subcontractor has satisfied himself as to the nature and location of the work, the character, quantity, and kind of material to be encountered, the character, kind, and quality of the equipment needed during the prosecution of the work, the location, conditions, and other matters which may in any manner affect the work under this Subcontractor agreement, and acknowledges that Subcontractor has had a reasonable opportunity to examine the site, all of the Main Contract documents and Subcontractor's proposal sufficiently to so satisfy himself.

H. **SUBCONTRACTOR EMPLOYER**
Subcontractor has the status of an employer as defined by the Industrial Insurance, Worker's Compensation Act, Social Security, and other similar acts of the federal, state and local Government. Subcontractor will withhold from its payroll the applicable Social Security taxes, Worker's Compensation, Unemployment Compensation contributions and withholding taxes and pay the same. The Contractor shall in no way be liable as an employer to or on account of any of the employees of the Subcontractor. Before final payment is made upon this Subcontract, Subcontractor shall furnish satisfactory evidence to the Contractor that he has conformed to said laws, rules and regulations and the Subcontractor hereby agrees to indemnify the Contractor for any and all liability under such laws arising from the work performed under this Subcontract Agreement.

I. **PERMITS, TAXES**
The Subcontractor shall secure and pay for all permits, fees and licenses necessary for the performance of the Subcontract and shall pay any and all federal, state and municipal taxes, including sales taxes, if any, for which the Subcontractor may be liable in carrying out the Subcontract.



**MATERIALS** delivered by or for the Subcontract and intended to be incorporated into the construction hereunder shall remain on the job site and shall become the property of the Owner upon delivery; but the Subcontractor may repossess himself of any surplus remaining at the completion of the contract. All scaffolding, apparatus, ways, works, machinery, and plant brought upon the premises by the Subcontractor shall remain his property; but in case of inability to perform and the completion of the work is done by the Contractor, the Contractor shall be entitled to use the said scaffolding, apparatus, ways, works, machinery, and plant without cost of liability for depreciation or damage by use and without prejudice to Contractor's other rights or remedies for any damage or loss sustained by reason of said inability. It shall be the Subcontractors responsibility to unload, store, and protect his materials and the Subcontractor shall bear the risk of loss thereof, and shall protect such material against loss until actually incorporated into the work and the work accepted, even though title thereto may previously have passed to the Owner under the proceeding provisions.

K. **TAKEOVER**
Subcontractor shall commence and at all times carry on, perform and complete this subcontract to the full and complete satisfaction of the Contractor and of the Architect/Engineer or Owner. It is specifically understood and agreed that in the event that the Contractor shall at any time determine that the Subcontractor is not proceeding with diligence and in such a manner as to satisfactorily complete the work within the required time, or if the Subcontractor shall fail to correct, replace or re-execute faulty or defective work done or materials furnished under this Subcontract as required by the Contractor, then and in the event the Contractor shall have the right after a five (5) calendar days notice confirmed in writing, to take over the work and to complete the same at the cost and expense of the Subcontractor, without prejudice to the Contractor's other rights or remedies for any loss or damage sustained. In the event of an emergency involving risk of loss or injury to person or property, arising prior to an actual takeover, Contractor may take appropriate action to mitigate such emergency and may charge Subcontractor for all costs incurred in such mitigation. Previous demands made on Subcontractor not followed by a takeover shall not be deemed a waiver of Contractor's right to do so.

L. **UNIT PRICE**
In the event the contract contains unit price items it is understood and agreed that any quantities mentioned are approximate only and subject to change as required by the Main Contract and as ordered and directed by the Contractor.

M. **MATERIAL QUALITY**
Materials condemned by the Contractor, Architect/Engineer or Owner as failing to conform to the Main Contract, worked or not, shall upon notice from the Contractor, be immediately removed by the Subcontractor. Failure of the Contractor to immediately condemn any work or materials as installed shall not in any way waive the Contractor's right to object thereto at any subsequent time.

N. **JOB DAMAGE**
Job damage caused by Subcontractor on work other than his own shall be reported immediately to Contractor, and Subcontractor shall be responsible for its repair. In the event of Subcontractor's failure to promptly repair (or to make adequate provision for the same) so as not to delay the progress of the work, Contractor may take such actions as are permitted under Paragraph "K", above.

O. **HOUSEKEEPING**
Subcontractor shall regularly and promptly remove all refuse, waste and debris produced by his operation. Refuse shall not be permitted to accumulate to the extent that it interferes with free access to the work site. Compliance with all safety requirements is an essential part of Subcontractor's obligation. In the event of Subcontractor's failure after notification or refusal to meet these requirements, refuse removal may be done by Contractor and charged against the account of Subcontractor.

P. **BOND**
Subcontractor shall furnish to the Contractor, unless waived by the Contractor, a performance and payment surety bond acceptable to the Contractor in an amount equal to this contract price, conditioned on and covering the faithful performance of, and compliance with, all the terms, provisions, and conditions of this contract, and payment for all labor, materials, equipment and supplies used in the execution of the work provided herein. Subcontractor's default: In the event of said default, Contractor shall be entitled to those remedies as set forth in Paragraph "K", above. **Performance and payment bond requirement is hereby waived.**

Q. **WORKER'S COMPENSATION**
Subcontractor shall furnish to Contractor evidence that he has in force Worker's Compensation Insurance, including Employer's Liability, as may be required by the jurisdiction or jurisdictions in which the work is being performed. Where applicable, this shall include United States Longshoremen's and Harbor Worker's Act Insurance, including Coverage B -- Employers (Maritime) with limits not less than the Bodily Injury limits required by the General Conditions of the Specification but in no event less than $500,000. Such evidence of insurance may be in the form of an Insurance Certificate issued by an insurer satisfactory to the Contractor and shall provide for not less than thirty (30) days' notice to Contractor of cancellation or reduction of coverage. In the event Subcontractor fails to maintain any insurance required by this Subcontract in force during the entire life of the Subcontract, Contractor may at his option purchase such insurance in the name of Subcontractor and deduct the cost of same from payments due Subcontractor.

R. **INSURANCE** (initial) _____
Subcontractor shall obtain and keep in force during the term of the contract public liability and property damage insurance with coverage equal to, or greater than, the minimum specified in the Main Contract. The Subcontractor shall furnish to the Contractor evidence of this insurance as in the same form as described in Paragraph "R" and name the Contractor as an **additional insured**. Such insurance indicates that it includes contractual liability coverage applicable to the indemnity provisions of this Subcontract. The Subcontractor shall give Contractor thirty (30) days notice of any cancellation. Failure to timely furnish said insurance, or its cancellation prior to final acceptance by Owner, shall be deemed a material breach by Subcontractor entitling Contractor to immediately terminate, after five (5) calendar days' notice, this Subcontract for default. In the event of said default, Contractor shall be entitled to those remedies as set forth in Paragraph "K", above.

S. **SUB-TIER CONTRACTORS**
Any Sub-Tier Contractor shall be bound to the Contractor in like manner as the Contractor is bound to the Owner.

T. **MODIFICATIONS**
No modifications of this agreement and no waiver of rights under this agreement shall be valid or binding on the parties unless the same be in writing. Failure of the Contractor to insist upon strict performance of the Subcontract, or to exercise any option herein conferred in any one or more instances, shall not be construed to be a waiver of any such, or any other, covenants or agreements, but the same shall be and remain in full force and effect.

U. **USE OF INTOXICANTS**
Subcontractor agrees that none of his employees shall use, during the time they are on or about the premises or location of the work, any alcoholic beverages, drugs or other intoxicants. Any violation of this paragraph shall be cause for termination of Subcontractor's Contract. Subcontractor acknowledges that this provision is included and specifically bargained for in order to protect Contractor's reputation with the public for quality workmanship and to further protect both Contractor and Subcontractor from any public and/or private liability that may arise from such use.

IN WITNESS WHEREOF THE CONTRACTOR and SUBCONTRACTOR have executed this agreement, effective the 4th day of June, 2004.

_6/14/04_
DATE

_6-14-04_
DATE

24650
Contractor Registration No.

29722
Subcontractor Registration No.

By _____
Authorized Signature of Contractor

By _____
Authorized Signature of Subcontractor

_Marlene Stengel_
Witness

_Lauren Ireason_
Witness

DATE:

SUBSCRIBED AND SWORN BEFORE ME THIS DAY OF _14th_

JUNE _____, 2004

NOTARY PUBLIC: _____
My Commission Expires October 16, 2007

PCI 000684



**INDEMNIFICATION ADDENDUM**

Marshall's Electric, Inc. (Subcontractor), hereby agrees to defend, indemnify and hold Pinnacle Construction, Inc. (Contractor) harmless from any and all claims, demands, losses and liabilities to or by third parties arising from its agents or employees to the fullest extent permitted by law and subject to the limitations provided below.

Subcontractor's duty to indemnify Contractor for liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the concurrent negligence of Contractor or Contractor's agents or employees, and Subcontractor or Subcontractor's agents or employees, shall apply only to the extent of negligence of Subcontractor or Subcontractor's agents or employees.

Subcontractor specifically and expressly waives any immunity that may be granted to it under the Alaska Statutes.  Furthermore, the indemnification obligation under this Subcontract shall not be limited in any way by any limitation on the amount or type of damage, compensation or benefits payable to or for any third party under Worker's Compensation acts, Disability Benefits acts, or other employee benefits acts.

Subcontractor's duty to defend, indemnify and hold Contractor harmless shall include, but not be limited to, all claims, demands, losses and liability to which it applies. Contractor's personnel-related costs, reasonable attorney's fees, court costs and all other claim-related expenses.

THE UNDERSIGNED HEREBY CERTIFY THAT THIS ADDENDUM WAS MUTUALLY NEGOTIATED.

Dated: _____6/14/04_____          Dated: ____6-14-04____

Company: Pinnacle Construction, Inc.          Company: Marshall's Electric, Inc.

Signature: _____          Signature: _____

**EXHIBIT " A "**

1.  To the Contract between Pinnacle Construction, Inc. and Marshall's Electric, Inc. Dated:  (June 4, 2004), Construction of Fire Station #10 Rabbit Creek at 14861 Mountain Air Drive, Anchorage, Alaska 99516, shall be performed in accordance with the following drawings and specifications:  all Drawings listed on page 00003-5 of the Fire Station #10 Rabbit Creek Project Manual, drawings dated February 12, 2004 and Specification Section 16000.

2.  Subcontractor shall provide all labor, materials tools, equipment, services, layout and supervision necessary for including but not limited to:  Electrical Demolition, Site Electrical and New Electrical Construction.  As per plans and specifications including, but not limited to:  all Drawings listed on page 00003-5 of the Fire Station #10 Rabbit Creek Project Manual.  Drawings dated February 12, 2004. Drawn by:  RIM Architects.

These shall include but not be limited to:

A.    Before commencing work, the Subcontractor shall provide the Contractor with the appropriate insurance certificates referenced in Sections R & S of the contract.  In no case will payment be made without proper insurance certificates.

B.    "As-Built" drawings must be submitted by electrical, mechanical, and underground Subcontractors and warranties and operating manuals must be submitted by all Subcontractors providing equipment before those Subcontractors will receive final payment.

C.    Subcontractor shall assign a qualified foreman for this project. The foreman shall be on the job site whenever work is being performed under this contract, and the foreman shall not be replaced during the course of the job, without written consent of the Contractor.

D.    Subcontractor shall be responsible for unloading, hoisting, storage and protection of all his own materials, as well as materials supplied by others to be installed within the Subcontractor's Scope of Work.

E.    Subcontractor shall be responsible for daily and final clean-up and disposal of his debris.

F.    NO EXTRA WORK SHALL BE PERFORMED WITHOUT WRITTEN APPROVAL FROM THE CONTRACTOR.

All changes or additions in the Scope of Work of this Subcontract required by local authorities (inspectors) must be in writing and signed by the inspector prior to submittal to the Contractor for approval (claims for verbal requests will not be honored).

G.    All work is to be completed when directed by the Contractor's representatives and in accordance with Contractor's schedule to follow.  It will be assumed that this schedule is acceptable unless the Contractor is notified in writing to the contrary within five (5) days of its receipt.

H.    Assistance or guidance provided by representatives of the contractor will not relieve the Subcontractor of complete responsibility for compliance with the plans and specifications.

I.    Pinnacle Construction, Inc. must receive submittals in a timely manner so as not to cause any delays in the progress of the work.  Allow twenty-one (21) days for review and return on each submittal.  The subcontractor shall coordinate all such submittals, and review them for accuracy, completeness, and compliance with the contractual requirements and shall indicate its approval thereon as evidence of such a coordination and review.  Submittals without such evidence of review and approval may be returned for resubmission. Failure to submit timely and correct submittals shall not warrant the extension of Subcontract Time.  Submit a minimum of six (6) copies of for approval.  The Owner will retain three copies, the Contractor will retain two copies and one copy will be returned to the Subcontractor.  Provide additional copies if Sub-Tier Subcontractors are required to submit.

J.    Subcontractor shall guarantee its work for a period of one (1) year (unless a longer period is specified in the contract documents) from the notice of completion filing date.  Corrective work required during the warranty period shall be performed within one (1) week of notification that a problem exists.

K.    All work shall comply with local, state, and federal safety requirements.

L.    All work shall be performed to the satisfaction of the Contractor & Owner.

M.    If requested by the Contractor, the Subcontractor agrees to complete and sign a joint check agreement for any or all of its suppliers and subcontractors.

N.    All requests for payment must be submitted on the "Subcontractor's Application for Payment" form, and must be notarized.

O.    All Subcontractors and all lower tier Subcontractors agree to follow the Contractor's Site Health & Safety Plan.

3. The general insurance coverage minimums required for this project are:

Combined Single Limit for Bodily Injury and Property Damage Liability

A.    General Liability          $ 1,000,000.00 Per Occurrence

B.    Automobile Liability          $ 1,000,000.00 Per Accident

SUBCONTRACTOR acknowledgment of Exhibit "A": _____  6-14-04
                                                                        Authorized Signature

SUBCONTR
Last Revised: 9-5-01

PCI 000685

# PINNACLE CONSTRUCTION, INC.

March 28, 2005
4141 Ingra Street, Suite 200
Anchorage, AK 99503
Ph 907-522-0040

| JOB #2004-70 | SUBCONTRACT | PHASE # 16050 |

This agreement was made and entered into by and between Pinnacle Construction, Inc., hereinafter called the Contractor, and Dynamic Systems, Inc., 1120 E. Huffman Rd., Suite 23, Anchorage, AK 99515, hereinafter called the Subcontractor, Witnesseth: The Contractor, for the full, complete and faithful performance of this Subcontract, agree to pay the Subcontractor:

(a) Lump Sum in the amount of: Three hundred seventy thousand three hundred twenty seven dollars and no cents ($370,327.00).

In consideration therefore, the Subcontractor agrees as follows:

1. To furnish and perform all work as listed below and in Exhibit "A", which is attached, for the construction of the AAFES Mini Mall/Food/Gas at Fort Richardson Army Base, Alaska, AAFES Contract Number HQ 04-REZC-063, for Army & Airforce Exchange Service, 3911 S. Walton Walker Blvd., Dallas, TX 75236, hereinafter called Owner, in accordance with the Contract dated the 10th day of August, 2004 between the Owner, and the Contractor, and the general provisions and special conditions of said Contract, and in accordance with the drawings and specifications and addenda for said construction by Koonce Pfeffer Bettis, Inc/Architect and Morris and Associates, all of which documents in their entirety are hereinafter referred to as the Main Contract and which have been made and remain available for Subcontractor review in the Contractor's office located at 2410 Azurite Court, Suite B, Anchorage, AK 99507.

2. To be bound by all laws, government regulations, and orders, and all provisions of the Main Contract insofar as they pertain to the performance of the work, which provisions are incorporated by reference and to be bound by the provisions printed herein.

3. To provide all supervision, materials, labor, supplies, tools and equipment as necessary to fully perform including but not limited to: full scope of Electrical scope as is. Exclusions: gear and lighting package. All work to be completed as per plans and specifications including, but not limited to section (s), Division 1 General Requirements, Division 16 Electrical, drawings dated 6/30/2004, and Amendment 1 dated 7/23/2004, prepared by Koonce Pfeffer Bettis, Inc. and Morris and Associates (Architect / Engineer).

See Exhibit "A"

A. **OBLIGATIONS AND RESPONSIBILITIES**

It is agreed that the Subcontractor will assume toward the Contractor all obligations and responsibilities which the Contractor has assumed toward the Owner under the Main Contract. In case of conflict between the terms of the obligation and the responsibilities of the parties of this Subcontract and the Main Contract, this Subcontract shall control. The Subcontractor agrees not to assign or subcontract a substantial portion of the performance of this Subcontract without the prior written consent of the Contractor. Subcontractor shall designate in writing all lower tier Subcontractors and Suppliers to Contractor and shall not subsequently change them without Contractor's prior approval.

B. **DRAWINGS AND SUBMITTALS**

Subcontractor agrees to furnish drawings, specifications and final selection of materials and other specified items for approval by Owner and Owner's agent so as not to delay progress of work. Provide a minimum of eight (8) of each submittal plus the number of copies to be returned to subcontractor. Final payment will be held until all submittals, including O&M manuals, and "As Built" drawings, have been submitted and approved by Owner or Owner's agent.

C. **SCHEDULING**

1. Contractor shall give Subcontractor advance notice of anticipated starting date for Subcontract work. Subcontractor shall start work on the date named by the Contractor, and shall complete the several portions and the whole of the work herein sublet, at such times as will enable the Contractor to fully comply with the Main Contract. Subcontractor shall cooperate with Contractor and other Subcontractors. The Subcontractor shall be bound by any provisions in the Main Contract for liquidated damages, and shall pay such damages for any delay to the extent caused by Subcontractor.

2. In addition to any such sums that Subcontractor shall be required to pay to Contractor by reason of reimbursements of liquidated damages payable to Owner, should Subcontractor fail to complete his work in a timely manner or otherwise delay the progress of the work, Subcontractor shall pay such actual costs as may be incurred by Contractor (including any additional financing costs), by reason of such delay.

3. In lieu of said damages, Subcontractor agrees that for each calendar day of delay caused by the acts or omissions of Subcontractor, Subcontractor shall be assessed the sum of (N/A) as liquidated and agreed damages to Contractor to cover the costs of said delay.

4. **No work to occur on Saturday.**

D. **PAYMENTS** (initial) _____

Subcontractor shall submit to the Contractor "Application for Payment", at the Contractors business office, properly notarized and executed by the twenty-fifth (25th) of the month, for all work performed that respective month projected through the end of the month, to enable the Contractor to timely apply for and obtain payment from the Owner. Subcontractor shall be paid for work performed, as approved by the Contractor, within ten (10) calendar days of receipt of payment from owner. All "Applications for Payment" received at the contractor's business office after the twenty-fifth (25th) are late and will not be billed until the twenty-fifth (25th) of the following month. Facsimile "Application for Payment" forms will not be accepted. Contractor shall withhold retainage from the Subcontractor at the rate of ten percent (10%), together with such further adjustments as may apply by virtue of Paragraph "C", supra. Payment for said retainage shall be made within ten (10) working days after receipt of retainage payment from Owner to Contractor. The Contractor's obligation to release retention to the Subcontractor shall be subject to proof that there are no unpaid claims which would provide the basis of a lien against the premises, retention or payment bond, or subject to (1) withholding of sufficient funds, or (2) furnishing an adequate and sufficient payment and performance bond. Progress payments shall be deemed advances and are subject to adjustment at any time prior to final payment for errors, overpayment, or Contractor's good faith determination that the remaining balance of payments may be insufficient to insure completion of the Subcontract work in accordance with its terms or to pay liens, retention, or bond claims. If the contract between Owner and Contractor permits payment for materials delivered to the job site, or to satisfactory storage facilities, Contractor may invoice for materials so delivered and receive payment therefor to the extent Prime Contractor is paid. Subcontractor shall be responsible for material as described in paragraph "J" materials, provided, however, that Subcontractor shall notify the Contractor of the assignment and shall require the acceptance by Assignee of the terms of this Subcontract, including the obligation for adjustments and return to Contractor of overpayment.

Subcontractor acknowledges receipt of contractors form titled "Subcontractors Application for Payment"(inc.) _____

E. **CLAIMS**

Partial payments for work performed under this agreement will equal the value of the work done by the Subcontractor at the agreed price, less the sum of previous payments and less a retained percentage as provided in Paragraph "D" above; Provided, that if the Subcontractor is indebted to the Contractor or anyone else for labor, fringes, taxes, supplies, materials, equipment, rental or proper charges against the work covered by this Subcontract Agreement, the amount of such indebtedness may be deducted by the Contractor. Contractor may, from time to time, require (and Subcontractor shall promptly provide) a statement in writing setting forth what amounts, if any, are due or payable by Subcontractor to third parties for labor, fringes, taxes, materials, equipment, or supplies in connection with, or arising out of the performance of the Subcontract, and the Contractor may withhold from any payment, partial or final, otherwise due under this Subcontract, such sums as the Contractor reasonably may determine are necessary to secure and protect the Contractor or the Owner from claims or liens that may be asserted by said third parties.

In the event suit or action is instituted to enforce any terms of this agreement, including any and all bankruptcy claims, actions and proceedings, the prevailing party shall be entitled to recover reasonable attorneys' fees and expenses, including but not limited to fees for searching records, obtaining title reports, and those incurred in appellate proceedings.

F. **CHANGE ORDERS**

The Contractor may, without invalidating this Subcontract, order in writing extra work or make changes by altering, adding to, or deducting from the work and the Subcontract price shall be adjusted accordingly. All such work shall be executed under the conditions thereof and of the Main Contract, except that any claims for extension of time caused thereby must be agreed upon at the time of ordering such change. The Subcontractor shall make no claims for extras unless the same shall be agreed upon in writing by the Contractor Project Manager prior to the performance of any such extra work. Payment for same shall be made within the ten (10) calendar days of receipt of payment from Owner to Contractor. In case of any disputes over the adjustment of the cost, Subcontractor shall proceed with the work and the dispute shall be resolved in accordance with the procedures set forth in the Main Contract to the extent that the Contractor is bound by such procedures.

G. **NATURE OF WORK**

Subcontractor has satisfied himself as to the nature and location of the work, the character, quantity, and kind of material to be encountered, the character, kind, and quality of the equipment needed during the prosecution of the work, the location, conditions, and other matters which may in any manner affect the work under this Subcontract agreement, and acknowledges that Subcontractor has had a reasonable opportunity to examine the site, all of the Main Contract documents and Subcontractor's proposal sufficiently to so satisfy himself.

H. **SUBCONTRACTOR EMPLOYER**

Subcontractor has the status of an employer as defined by the Industrial Insurance, Worker's Compensation Act, Social Security, and other similar acts of the federal, state and local Government. Subcontractor will withhold from its payroll the applicable Social Security taxes, Worker's Compensation, Unemployment Compensation contributions and withholding taxes and pay the same. The Contractor shall in no way be liable as an employer to or on account of any of the employees of the Subcontractor. Before final payment is made under this Subcontract, Subcontractor shall furnish satisfactory evidence to the Contractor that he has conformed to said laws, rules and regulations and the Subcontractor hereby agrees to indemnity the Contractor for any and all liability under such laws arising from the work performed under this Subcontract Agreement.

I. **PERMITS, TAXES**

The Subcontractor shall secure and pay for permits, fees and licenses necessary for the performance of the Subcontract and shall pay any and all federal, state and municipal taxes, including sales taxes, if any, for which the Subcontractor may be liable in carrying out the Subcontract.

J.  **MATERIALS**
Materials delivered by or for the Subcontract and intended to be incorporated into the construction hereunder shall remain on the job site and shall become the property of the Owner upon delivery; but the Subcontractor may repossess himself of any surplus remaining at the completion of the contract. All scaffolding, apparatus, ways, works, machinery, and plant brought upon the premises by the Subcontractor shall remain his property; but in case of inability to perform and the completion of the work is done by the Contractor, the Contractor shall be entitled to use the said scaffolding, apparatus, ways, works, machinery, and plant without cost of liability for depreciation or damage by use and without prejudice to Contractor's other rights or remedies for any damage or loss sustained by reason of said inability. It shall be the Subcontractors responsibility to unload, store, and protect his materials and the Subcontractor shall bear the risk of loss thereof, and shall protect such material against loss until actually incorporated into the work and the work accepted, even though title thereto may previously have passed to the Owner under the proceeding provisions.

K.  **TAKEOVER**
Subcontractor shall commence and at all times carry on, perform and complete this subcontract to the full and complete satisfaction of the Contractor and of the Architect/Engineer or Owner. It is specifically understood and agreed that in the event that the Contractor shall at any time determine that the Subcontractor is not proceeding with diligence and in such a manner as to satisfactorily complete the work within the required time, or if the Subcontractor shall fail to correct, replace or re-execute faulty or defective work done or materials furnished under this Subcontract as required by the Contractor, then and in the event the Contractor shall have the right after a five (5) calendar days notice confirmed in writing, to take over the work and to complete the same at the cost and expense of the Subcontractor, without prejudice to the Contractor's other rights or remedies for any loss or damage sustained. In the event of an emergency involving risk of loss or injury to person or property, arising prior to an actual takeover, Contractor may take appropriate action to mitigate such emergency and may charge Subcontractor for all costs incurred in such mitigation. Previous demands made on Subcontractor not followed by a takeover shall not be deemed a waiver of Contractor's right to do so.

L.  **UNIT PRICE**
In the event the contract contains unit price items it is understood and agreed that any quantities mentioned are approximate only and subject to change as required by the Main Contract and as ordered and directed by the Contractor.

M.  **MATERIAL QUALITY**
Materials condemned by the Contractor, Architect/Engineer or Owner as failing to conform to the Main Contract, worked or not, shall upon notice from the Contractor, be immediately removed by the Subcontractor. Failure of the Contractor to immediately condemn any work or materials as installed shall not in any way waive the Contractor's right to object thereto at any subsequent time.

N.  **JOB DAMAGE**
Job damage caused by Subcontractor on work other than his own shall be reported immediately to Contractor, and Subcontractor shall be responsible for its repair. In the event of Subcontractor's failure to promptly repair (or to make adequate provision for the same) so as not to delay the progress of the work, Contractor may take such actions as are permitted under Paragraph "K", above.

O.  **HOUSEKEEPING**
Subcontractor shall regularly and promptly remove all refuse, waste and debris produced by his operation. Refuse shall not be permitted to accumulate to the extent that it interferes with free access to the work site. Compliance with all safety requirements is an essential part of Subcontractor's obligation. In the event of Subcontractor's failure after notification or refusal to meet these requirements, refuse removal may be done by Contractor and charged against the account of Subcontractor.

P.  **BOND**
Subcontractor shall furnish to the Contractor, unless waived by the Contractor, a performance and payment surety bond acceptable to the Contractor in an amount equal to this contract price, conditioned on and covering the faithful performance of, and compliance with, all the terms, provisions, and conditions of this contract, and payment for all labor, materials, equipment and supplies used in the execution of the work provided herein. Subcontractor's default: In the event of said default, Contractor shall be entitled to those remedies as set forth in Paragraph "K", above.

Q.  **WORKER'S COMPENSATION**
Subcontractor shall furnish to Contractor evidence that he has in force Worker's Compensation Insurance, including Employer's Liability, as may be required by the jurisdiction or jurisdictions in which the work is being performed. Where applicable, this shall include United States Longshoremen's and Harbor Worker's Act Insurance, including Coverage B – Employers (Maritime) with limits not less than the Bodily Injury limits required by the General Conditions of the Specification but in no event less than $500,000.00. Such evidence of insurance may be in the form of an Insurance Certificate issued by an insurer satisfactory to the Contractor and shall provide for not less than thirty (30) days' notice to Contractor of cancellation or reduction of coverage. In the event Subcontractor fails to maintain any insurance required by this Subcontract in force during the entire life of the Subcontract, Contractor may at his option purchase such insurance in the name of Subcontractor and deduct the cost of same from payments due Subcontractor.

R.  **INSURANCE** (initial) _____
Subcontractor shall obtain and keep in force during the term of the contract public liability and property damage insurance with coverage equal to, or greater than, the minimum specified in the Main Contract. The Subcontractor shall furnish to Contractor evidence of this insurance as in the same form as described in Paragraph "R" and name the Contractor as an additional insured. Such insurance indicates that it includes contractual liability coverage applicable to the indemnity provisions of this Subcontract. The Subcontractor shall give Contractor thirty (30) days notice of any cancellation. Failure to timely furnish said insurance, or its cancellation prior to final acceptance by Owner, shall be deemed a material breach by Subcontractor entitling Contractor to immediately terminate, after five (5) calendar days' notice, this Subcontract for default. In the event of said default, Contractor shall be entitled to those remedies as set forth in Paragraph "K", above.

S.  **SUB-TIER CONTRACTORS**
Any Sub-Tier Contractor shall be bound to the Contractor in like manner as the Contractor is bound to the Owner.

T.  **MODIFICATIONS**
No modification of this agreement and no waiver of rights under this agreement shall be valid or binding on the parties unless the same be in writing. Failure of the Contractor to insist upon strict performance of the Subcontract, or to exercise any option herein conferred in any one or more instances, shall not be construed to be a waiver of any such, or any other, covenants or agreements, but the same shall be and remain in full force and effect.

U.  **USE OF INTOXICANTS**
Subcontractor agrees that none of his employees shall use, during the time they are on or about the premises or location of the work, any alcoholic beverages, drugs or other intoxicants. Any violation of this paragraph shall be cause for termination of Subcontractor's Contract. Subcontractor acknowledges that this provision is included and specifically bargained for in order to protect Contractor's reputation with the public for quality workmanship and to further protect both Contractor and Subcontractor from any public and/or private liability that may arise from such use.

IN WITNESS WHEREOF THE CONTRACTOR and SUBCONTRACTOR have executed this agreement, effective the March 28, 2005.

| 5-5-05 | Mar-28-05 |
|---|---|
| DATE | DATE |
| 24650 | *27753 |
| Contractor Registration No. | Subcontractor Registration No. |

By: _Matthew Hartman_          By: _____
Authorized Signature of Contractor        Authorized Signature of Subcontractor

_____          _Marlene Stengl_
Witness                Witness

PCI 000687

**INDEMNIFICATION ADDENDUM**

Dynamic Systems, Inc. (Subcontractor), hereby agrees to defend, indemnify and hold Pinnacle Construction, Inc. (Contractor) harmless from any and all claims, demands, losses and liabilities to or by third parties arising from its agents or employees to the fullest extent permitted by law and subject to the limitations provided below.

Subcontractor's duty to indemnify Contractor for liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the concurrent negligence of Contractor or Contractor's agents or employees, and Subcontractor or Subcontractor's agents or employees, shall apply only to the extent of negligence of Subcontractor or Subcontractor's agents or employees.

Subcontractor specifically and expressly waives any immunity that may be granted to it under the Alaska Statutes. Furthermore, the indemnification obligation under this Subcontract shall not be limited in any way by any limitation on the amount or type of damage, compensation or benefits payable to or for any third party under Worker's Compensation acts, Disability Benefits acts, or other employee benefits acts.

Subcontractor's duty to defend, indemnify and hold Contractor harmless shall include, but not be limited to, all claims, demands, losses and liability to which it applies, Contractor's personnel-related costs, reasonable attorney's fees, court costs and all other claim-related expenses.

THE UNDERSIGNED HEREBY CERTIFY THAT THIS ADDENDUM WAS MUTUALLY NEGOTIATED.

Dated: _____ **5-5-05** _____          Dated: __ MAR - 28 - 05 __

Company: Pinnacle Construction, Inc.          Company: Dynamic Systems, Inc.

Signature: _Matthew Hartman_          Signature: _____
                                          ANDREW Buck

**EXHIBIT " A "**

1. To the Contract between Pinnacle Construction, Inc. and Dynamic Systems, Inc. dated March 28, 2005 for Construction of AAFES Mini Mall/Food/Gas located at Fort Richardson, Alaska, AAFES Contract Number HQ 04-REZC-063.

2. Subcontractor shall provide all labor, materials tools, equipment, services, layout and supervision necessary for, including but not limited to: Take over of Electrical scope as is. Exclusions: gear and lighting package. All work to be completed as per plans and specifications including, but not limited to section (s), Division 1 General Requirements, Division 16 Electrical, drawings dated 6/30/2004, and Amendment 1 dated 7/23/2004, prepared by Koonce Pfeffer Bettis, Inc. and Morris and Associates (Architect / Engineer).

   To further clarify certain Contract requirements, the following items are included in this agreement. (The following items do not supersede and / or modify this agreement and / or the main contract, but are intended to further clarify and / or amplify the subcontract agreement and the main contract requirements.)

A. Before commencing work, the Subcontractor shall provide the Contractor with the appropriate insurance certificates referenced in Sections Q & R of the contract. In no case will payment be made without proper insurance certificates.

B. "As-Built" drawings must be submitted by electrical, mechanical, and underground Subcontractors and warranties and operating manuals must be submitted by all Subcontractors providing equipment before those Subcontractors will receive final payment.

C. Subcontractor shall assign a qualified foreman to this project. The foreman shall be on the job site whenever work is being performed under this contract, and the foreman shall not be replaced during the course of the job, without written consent of the Contractor.

D. Subcontractor shall be responsible for unloading, hoisting, storage and protection of all his own materials, as well as materials supplied by others to be installed within the Subcontractor's Scope of Work.

E. Subcontractor shall be responsible for daily and final clean-up and disposal of his debris. Contractor will provide a dumpster. After written notification, subcontractor will be back charged at a rate of $70.00 per hour for subcontractor debris that is cleaned up by Contractor.

F. NO EXTRA WORK SHALL BE PERFORMED WITHOUT WRITTEN APPROVAL FROM THE CONTRACTOR. All changes or additions in the Scope of Work of this Subcontract required by local authorities (inspectors) must be in writing and signed by the inspector prior to submittal to the Contractor for approval (claims for verbal requests will not be honored).

G. All work is to be completed when directed by the Contractor's representatives and in accordance with Contractor's schedule. It will be assumed that this schedule is acceptable unless the Contractor is notified in writing to the contrary within five (5) days of its receipts. The schedule is a working document and is subject to updates and modifications.

H. Assistance or guidance provided by representatives of the contractor will not relieve the Subcontractor of complete responsibility for compliance with the plans and specifications.

I. Pinnacle Construction, Inc. must receive submittals in a timely manner so as not to cause any delays in the progress of the work. Allow fourteen (14) days for review and return on each submittal. The subcontractor shall coordinate all such submittals, and review them for accuracy, completeness, and compliance with the contractual requirements and shall indicate its approval thereon as evidence of such coordination and review. Submittals without such evidence of review and approval may be returned for resubmission. Submit a minimum of eight (8) copies for approval, the Owner will retain six copies, the contractor will retain two copies and remaining copies will be returned to subcontractor.

J. Subcontractor shall guarantee its work for a period of one (1) year (unless a longer period is specified in the main contract documents) from the notice of completion filing date. Corrective work required during the warranty period shall be performed within one (1) week of notification that a problem exists.

K. All work shall comply with local, state, and federal safety requirements.

L. All work shall be performed to the satisfaction of the Contractor & Owner.

M. If requested by the Contractor, the Subcontractor agrees to complete and sign a joint check agreement for any or all of its suppliers and subcontractors.

N. All requests for payment must be submitted on the "Subcontractor's Application for Payment" form, and must be notarized.

O. All Subcontractors and all lower tier subcontractors agree to follow Contractor's Site Health and Safety Plan.

3. The general insurance coverage minimums required for this project are:

Combined Single Limit for Bodily Injury and Property Damage Liability

   A. General Liability          $ 1,000,000.00 Per Occurrence
   B. Automobile Liability       $ 1,000,000.00 Per Accident
   C. General Aggregate Limit,   $2,000,000 Per Project

SUBCONTRACTOR acknowledgment of Exhibit "A": _____
                                          Authorized Signature



# DYNAMIC SYSTEMS INC.

RECEIVED

MAR 3 1 2005

PINNACLE CONSTRUCTION

## FAX COVER SHEET

To: MATT                          Fax: 522-0041

Company: PINNACLE                 Pages: ONE

From: ANDY                        Date: MAR-31-05

Subject:

FORT RICHARDSON MINI MALL

MATT I DIDN'T EXPECT TO BE
ABLE TO INVOICE ANYTHING UNTIL
APRIL 25TH, THANK YOU FOR THE CALL.
I WILL HAVE YOUR FORM FILLED
OUT AND NOTARIZED TOMORROW.

| | |
|---|---|
| MOBILIZATION | 2,200.00 |
| PAYMENT TO COMTEC | 3,888.00 |
| MATERIAL ON SITE | 9,240.00 |
| LABOR TO DATE | 6,900.00 |
| | 22,228.00 |
| LESS 10% HOLDBACK | -2,222.80 |
| CLAIM FOR MARCH. | $ 20,005.20 |

Page 1 of 1

# 625
1120 E. Huffman Rd Ste. 23
Anchorage, AK 99515-3561

Phone: 907.344.1846
Fax: 907.344.1856
E-mail: abuck@ak.net

#1

# DYNAMIC SYSTEMS INC.

| MONTHLY PROGRESS CLAIM | | | | DATE: Mar 05 | |
|---|---|---|---|---|---|
| PROJECT: Fort Richardson Mini Mall | | | | | |
| ITEM | AMOUNT | THIS PERIOD | PREVIOUS | TO DATE | % COMPLETE |
| Fuel Sys Elect | 79525 | 0 | 0 | 0 | 0 |
| Bldg Rough-in | 128681 | 11114 | 0 | 11114 | 9 |
| Lighting | 54424 | 11114 | 0 | 11114 | 20 |
| Site Lighting | 43857 | 0 | 0 | 0 | 0 |
| Tel/Comm | 37484 | 0 | 0 | 0 | 0 |
| Elect Trim | 26356 | 0 | 0 | 0 | 0 |
| | | | | 0 | 0 |
| | | | | 0 | 0 |
| | | | | 0 | 0 |
| | | | | 0 | 0 |
| TOTALS | 370327 | 22228 | 0 | 22228 | 6 |

PCI 000690

# Pinnacle Construction, Inc.
### 2410 Azurite Ct., Suite B/ Anchorage, AK 99507
### Phone 907-522-0040 / Fax 907-522-0041

RECEIVED

## Subcontractor Application for Payment / Lien Release

FOR OFFICE USE ONLY: Project Name: _____ Job No.: _____ Subcontract No. _____
Date: _____ Entered: 4/3047 _ GL #: 51500  Cost Code: _____

Category: Subcontractor   PM Approval: _____

Subcontractor: DYNAMIC SYSTEMS INC.
Address: #G25 - 1120 E HUFFMAN RD STE 23 ANCH. AK 99515
Pay Request
No.: 1    Date of Request: MAR-31-05   Period: MAR 27-05 To MAR 31-05

| | | | | |
|---|---|---|---|---|
| 1 | Original Contract Amount | $ 370,327.00 | $ | 1 |
| 2 | Approved Changes (Net) (Add / Deduct) as per attached | $ 0 | $ | 2 |
| 3 | Adjusted Contract Amount | $ 370,327.00 | $ | 3 |
| 4 | Value of work completed to date (3.5 % of line 3). | $ 12,988.00 | $ | 4 |
| 5 | Materials stored on site (subject to owner approval ) | $ 9,240.00 | $ | 5 |
| 6 | Total of lines 4 and 5. | $ 22,228.00 | $ | 6 |
| 7 | Less total amount previously requested | $ 0 | $ | 7 |
| 8 | Total amount requested this application. | $ 22,228.00 | $ | 8 |
| 9 | Special payment term ( Discount 0 % ) | $ 0 | $ | 9 |
| 10 | Less Retainage this request ( 10 % of line 8 ) | $ 2,222.80 | $ | 10 |
| 11 | Total Retainage to date ( 10 % of line 6 ) | $ 2,222.80 | $ | 11 |
| 12 | NET AMOUNT DUE THIS REQUEST | $ 20,005.20 | $ | 12 |

Pd √ #16640  5/25/05  $20,005.20

## CERTIFICATE OF THE SUBCONTRACTOR:

I hereby certify that the work performed and the materials supplied to date, as shown on the above, represent the actual value of accomplishment under the terms of the Contract (and all authorized changes there to) between the undersigned and Pinnacle Construction, Inc. relating to the above referenced project.

I also certify that payments, less applicable retention, have been made through the period covered by previous payments received from the contractor, to (1) all my subcontractors (sub subcontractors) and (2) for all materials, equipment rental and labor used in or in connection with performance of this Contract. I further certify I have complied with Federal, State and local tax laws, including Social Security, Unemployment Compensation, that all work performed and materials furnished have been provided without discrimination as to race, creed, color, notional origin, sex or age.

Furthermore, in consideration of the payments received, and upon receipt of the amount of this request, the undersigned does hereby waive, release and relinquish all claim or right of lien which the undersigned may now have upon the premises above described or against retainage or any bond except for claims or right of lien for contract and/or change order work performed to extent that payment is being retained or will subsequently become due and agree to hold Pinnacle Construction, Inc. harmless from any claim of lien by rny subcontractors, suppliers, equipment rental or labor.

Date: April 2005        Date: APRIL-1-05
Subscribed and sworn before me this day of April   Subcontractor DYNAMIC SYSTEMS INC
1 - _____ 2005        By (Authorized Signature) _____ AUBREY BUCK

Notary Public: Sandra Miller
My Commission Expires: April 2008

OFFICIAL SEAL
SANDRA MILLER
NOTARY PUBLIC - ALASKA
MY COMMISSION EXPIRES: April 1, 2008

PCI 000691

PINNACLE CONSTRUCTION INC.

16640

**Check#: 16640**  **Date: 05/25/2005**  **Amount: 135,940.70**  **Vendor: 626 Dynamic Systems, Inc.**

| Invoice# | Description | Balance | Discount | This Check |
|---|---|---|---|---|
| FRMM PR #1 | FRMM PR #1 - Mar 05 | 22,228.00 | | 20,005.20 |
| FRMM P/R #2 | FRMM P/R #2 April 05 | 125,645.00 | | 113,080.50 |
| AK1263 | Inv AK1263 | 1,960.00 | | 1,960.00 |
| AK 1265 | Inv AK 1265 | 895.00 | | 895.00 |

PRODUCT LM102    USE WITH 9360 ENVELOPE    NEBS  To Reorder: 1-800-225-6380 or www.nebs.com    PRINTED IN U.S.A.    A

PCI 000692

DYNAMIC SYSTEMS INC.

1120 E Huffman Rd Ste23 #625
Anchorage, Alaska 99515-3561

RECEIVED

APR 2 5 2005

PINNACLE CONSTRUCTION

# Invoice

| Date | Invoice # |
|---|---|
| 4/25/2005 | AK1258 |

**Bill To**

Pinnacle Construction Inc.
4141 Ingra St.
Anchorage, Alaska 99503

| P.O. No. | Terms | Project |
|---|---|---|
| Fort Richardson Mi... | | |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| 1 | Progress Claim # 2; Labor and Material up to the end of April. *#2* | 113,080.50 | 113,080.50 |
| | **Total** | | $113,080.50 |

#2

# DYNAMIC SYSTEMS INC.

| MONTHLY PROGRESS CLAIM | | | | DATE: April 05 | |
|---|---|---|---|---|---|
| PROJECT: Fort Richardson Mini Mall | | | | | |
| ITEM | AMOUNT | THIS PERIOD | PREVIOUS | TO DATE | % COMPLETE |
| Mobilization | 2200 | 0 | 2200 | 2200 | 100 |
| Interior Material | 46007 | 19740 | 9240 | 28980 | 63 |
| Interior Labor | 147082 | 81675 | 6900 | 88575 | 60 |
| Exterior Material | 42468 | 0 | 0 | 0 | 0 |
| Exterior Labor | 83970 | 0 | 0 | 0 | 0 |
| Data Sub | 28800 | 12500 | 0 | 12500 | 43 |
| Fire Alarm Sub | 19800 | 11730 | 3888 | 15618 | 79 |
| | | | | 0 | 0 |
| | | | | 0 | 0 |
| | | | | 0 | 0 |
| TOTALS | 370327 | 125645 | 22228 | 147873 | 40 |

# Pinnacle Construction, Inc.
**2410 Azurite Ct., Suite B/ Anchorage, AK  99507**
**Phone 907-522-0040 / Fax 907-522-0041**

### Subcontractor Application for Payment / Lien Release

FOR OFFICE USE ONLY: Project Name: ___FRMM___    Job No.: _200470_  Subcontract No.: _200470-21_
Date: _4/25/05_   Entered: ~~138H~~  GL #: _51500_  Cost Code: _16060 S_
13932
Category: _Subcontractor_   PM Approval: _(MN)_

Subcontractor: __DYNAMIC SYSTEMS INC.__
Address: __7625 - 1120 E. HUFFMAN RD STE 23 ANCHORAGE AK 99515__
Pay Request
No.: _2_     Date of Request: _APRIL-25-05_  Period: _APRIL-1-05_  To: _APRIL-30-05_

|   |   | THIS MONTH | TOTAL TO DATE |   |
|---|---|---|---|---|
| 1 | Original Contract Amount | $ 370,327.00 | $ | 1 |
| 2 | Approved Changes (Net) (Add / Deduct) as per attached | $ 0 | $ | 2 |
| 3 | Adjusted Contract Amount | $ 370,327.00 | $ | 3 |
| 4 | Value of work completed to date (40 % of line 3). | $ 136,143.00 | $ | 4 |
| 5 | Materials stored on site (subject to owner approval ) | $ 11,730.00 | $ | 5 |
| 6 | Total of lines 4 and 5. | $ 147,873.00 | $ | 6 |
| 7 | Less total amount previously requested | $ 22,228.00 | $ | 7 |
| 8 | Total amount requested this application. | $ 125,645.00 | $ | 8 |
| 9 | Special payment term ( Discount _0_ % ) | $ 0 | $ | 9 |
| 10 | Less Retainage this request ( _10_ % of line 8 ) | $ 12,564.50 | $ | 10 |
| 11 | Total Retainage to date ( _10_ % of line 6 ) | $ 14,787.30 | $ | 11 |
| 12 | NET AMOUNT DUE THIS REQUEST | $ 113,080.50 | $ | 12 |

Pd √#16640 6/25/05 $113,080.50

## CERTIFICATE OF THE SUBCONTRACTOR:

I hereby certify that the work performed and the materials supplied to date, as shown on the above, represent the actual value of accomplishment under the terms of the Contract (and all authorized changes there to) between the undersigned and Pinnacle Construction, Inc. relating to the above referenced project.

I also certify that payments, less applicable retention, have been made through the period covered by previous payments received from the contractor, to (1) all my subcontractors (sub subcontractors) and (2) for all materials, equipment rental and labor used in or in connection with performance of this Contract. I further certify I have complied with Federal, State and local tax laws, including Social Security, Unemployment Compensation, that all work performed and materials furnished have been provided without discrimination as to race, creed, color, notional origin, sex or age.

Furthermore, in consideration of the payments received, and upon receipt of the amount of this request, the undersigned does hereby waive, release and relinquish all claim or right of lien which the undersigned may now have upon the premises above described or against retainage or any bond except for claims or right of lien for contract and/or change order work performed to extent that payment is being retained or will subsequently become due and agree to hold Pinnacle Construction, Inc. harmless from any claim of lien by my subcontractors, suppliers, equipment rental or labor.

Date: _4-25-2005_
Subscribed and sworn before me this day of _Apl_
_25_  200 _5_
Notary Public: _Claudia Miller_
My Commission Expires: _April 1,200_

Date _APRIL-25-05_
Subcontractor _DYNAMIC SYSTEMS INC._
By (Authorized Signature) _____
Title _SEC/TRES._

OFFICIAL SEAL
SANDRA MILLER
NOTARY PUBLIC - ALASKA
MY COMMISSION EXPIRES: April 1, 2008

# PINNACLE CONSTRUCTION INC.

| Check#: 16640 | Date: 05/25/2005 | Amount: 135,940.70 | Vendor: 626 Dynamic Systems, Inc. |
|---|---|---|---|

| Invoice# | Description | Balance | Discount | This Check |
|---|---|---|---|---|
| FRMM PR #1 | FRMM PR #1 - Mar 05 | 22,228.00 | | 20,005.20 |
| FRMM P/R #2 | FRMM P/R #2 April 05 | 125,645.00 | | 113,080.50 |
| AK1263 | Inv AK1263 | 1,960.00 | | 1,960.00 |
| AK 1265 | Inv AK 1265 | 895.00 | | 895.00 |

ıODUCT LM102    USE WITH 9080 ENVELOPE    NEBS  To Reorder: 1-800-225-6380 or www.nebs.com    PRINTED IN U.S.A.

**DYNAMIC SYSTEMS INC.**

1120 E Huffman Rd Ste23 #625
Anchorage, Alaska 99515-3561

RECEIVED
MAY 2 4 2005
PINNACLE CONSTRUCTION

# Invoice

| Date | Invoice # |
|------|-----------|
| 5/25/2005 | AK1268 |

| Bill To |
|---------|
| Pinnacle Construction Inc.<br>4141 Ingra St.<br>Anchorage, Alaska 99503 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
| Fort Richardson Mi... | | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Progress Claim for May<br>#3 | 123,474.60 | 123,474.60 |
| | **Total** | | $123,474.60 |

PCI 000697

# 3

# DYNAMIC SYSTEMS INC.

| **MONTHLY PROGRESS CLAIM** | | | | Date: May 25, 05 | |
|---|---|---|---|---|---|
| PROJECT: Fort Richardson Mini Mall | | | | | |
| ITEM | AMOUNT | THIS PERIOD | PREVIOUS | TO DATE | % COMPLETE |
| Fuel Sys Elect | 79525 | 36469 | 0 | 36469 | 46 |
| Bldg Rough-in | 128681 | 29672 | 81461 | 122247 | 95 |
| Lighting | 54424 | 12146 | 23000 | 46260 | 90 |
| Site Lighting | 43857 | 37278 | 0 | 37278 | 85 |
| Tel/Comm | 37484 | 3180 | 21184 | 24364 | 65 |
| Elect Trim | 26356 | 18449 | 0 | 18449 | 70 |
| | | | | 0 | 0 |
| | | | | 0 | 0 |
| | | | | 0 | 0 |
| | | | | 0 | 0 |
| TOTALS | 370327 | 137194 | 125645 | 285067 | 77 |

PCI 000698

# Pinnacle Construction, Inc.

2410 Azurite Ct., Suite B/ Anchorage, AK  99507
Phone 907-522-0040 / Fax 907-522-0041

RECEIVED
MAY 2 4 2005
PINNACLE CONSTRUCTION

## Subcontractor Application for Payment / Lien Release

FOR OFFICE USE ONLY: Project Name: _Ft Rich Min Mall_    Job No.: _2004 70_ Subcontract No.: _2004 70-21_

Date: _5/31/05_ Entered: _14113_    GL #: _51500_ Cost Code: _160505_
                        _14246_
Category: Subcontractor    PM Approval: _MH_

Subcontractor: _DYNAMIC SYSTEMS INC._
Address: _#625 - 1120 E HUFFMAN RD STE 23 ANCHORAGE, AK 99515_

Pay Request No.: _3_    Date of Request:    Period: _MAY-1-05_    To: _MAY-31-05_

| | | | | | |
|---|---|---|---|---|---|
| 1 | Original Contract Amount | $ _370,327.00_ | $ | | 1 |
| 2 | Approved Changes (Net) (Add / Deduct) as per attached | $ _∅_ | $ | | 2 |
| 3 | Adjusted Contract Amount | $ _370,327.00_ | $ | | 3 |
| 4 | Value of work completed to date ( _71_ % of line 3) | $ _262,839.00_ | $ | | 4 |
| 5 | Materials stored on site (subject to owner approval ) | $ _∅_ | $ | | 5 |
| 6 | Total of lines 4 and 5. | $ _262,839.00_ | $ | | 6 |
| 7 | Less total amount previously requested | $ _125,645.00_ | $ _147,873_ | | 7 |
| 8 | Total amount requested this application. | $ _137,194.00_ | $ | | 8 |
| 9 | Special payment term ( Discount _∅_ % ) | $ _∅_ | $ | | 9 |
| 10 | Less Retainage this request ( _10_ % of line 8 ) | $ _13,719.40_ | $ | | 10 |
| 11 | Total Retainage to date ( _10_ % of line 6 ) | $ _28,506.70_ | $ | | 11 |
| 12 | NET AMOUNT DUE THIS REQUEST | $ _123,474.60_ | $ | | 12 |

_Pd √# 16942  7/8/05  $123474.60_

## CERTIFICATE OF THE SUBCONTRACTOR:

I hereby certify that the work performed and the materials supplied to date, as shown on the above, represent the actual value of accomplishment under the terms of the Contract (and all authorized changes there to) between the undersigned and Pinnacle Construction, Inc. relating to the above referenced project.

I also certify that payments, less applicable retention, have been made through the period covered by previous payments received from the contractor, to (1) all my subcontractors (sub subcontractors) and (2) for all materials, equipment rental and labor used in or connection with performance of this Contract. I further certify I have complied with Federal, State and local tax laws, including Social Security, Unemployment Compensation, that all work performed and materials furnished have been provided without discrimination as to race, creed, color, notional origin, sex or age.

Furthermore, in consideration of the payments received, and upon receipt of the amount of this request, the undersigned does hereby waive, release and relinquish all claim or right of lien which the undersigned may now have upon the premises above described or against retainage or any bond except for claims or right of lien for contract and/or change order work performed to extent that payment is being retained or will subsequently become due and agree to hold Pinnacle Construction, Inc. harmless from any claim of lien by my subcontractors, suppliers, equipment rental or labor.

Date: _May 24, 2005_
Subscribed and sworn before me this day of _24_
_May_            200_5_
Notary Public: _Jill C. James_
My Commission Expires: _5/1/08_

Date _MAY - 24 - 05_
Subcontractor _DYNAMIC SYSTEMS INC._
By (Authorized Signature) _____
Title _SEC/TRES_

PINNACLE CONSTRUCTION INC.                                                    16942

| Check#: 16942 | Date: 07/08/2005 | Amount: 123,474.60 | Vendor: 626 Dynamic Systems, Inc. | | |
|---|---|---|---|---|---|
| Invoice# | Description | | Balance | Discount | This Check |
| FRMM P/R #3 | FRMM P/R #3, May 05 | | 137,194.00 | | 123,474.60 |

PCI 000700

DYNAMIC SYSTEMS INC.

# Invoice

1120 E Huffman Rd Ste23  #625
Anchorage, Alaska 99515-3561

| Date | Invoice # |
|------|-----------|
| 6/24/2005 | AK 1281 |

**Bill To**

Pinnacle Construction Inc.
4141 Ingra St.
Anchorage, Alaska 99503

| P.O. No. | Terms | Project |
|----------|-------|---------|
|          |       |         |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Progress Claim for June at the Fort Richardson Mini Mall. #4 | 93,354.67 | 93,354.67 |

| | Total | $93,354.67 |
|---|-------|-----------|

PCI 000701

#4

# DYNAMIC SYSTEMS INC.

| MONTHLY PROGRESS CLAIM | | | 25-Jun | | |
|---|---|---|---|---|---|
| PROJECT: Fort Richardson Mini Mall | | | | | |
| ITEM | AMOUNT | THIS PERIOD | PREVIOUS | TO DATE | % COMPLETE |
| Fuel Sys Elect | 79525.00 | 35103.00 | 36469.00 | 71572.00 | 90 |
| Bldg Rough-in | 128681.00 | 6434.00 | 29672.00 | 128681.00 | 100 |
| Lighting | 54424.00 | 8164.00 | 12146.00 | 54424.00 | 100 |
| Site Lighting | 43857.00 | 6579.00 | 37278.00 | 43857.00 | 100 |
| Tel/Comm | 37484.00 | 13120.00 | 3180.00 | 37484.00 | 100 |
| Elect Trim | 26356.00 | 7907.00 | 18449.00 | 26356.00 | 100 |
| Add TV and Pwr | 1663.89 | 1663.89 | 0.00 | 1663.89 | 100 |
| Bailer Relocate | 657.38 | 657.38 | 0.00 | 657.38 | 100 |
| ESK-2/E3.1 | 1962.72 | 1962.72 | 0.00 | 1962.72 | 100 |
| ESK-3/E3.1 | 1819.46 | 1819.46 | 0.00 | 1819.46 | 100 |
| ESK-4/E3.1 | -429.14 | -429.14 | 0.00 | -429.14 | 100 |
| ESK-5/E6.1 | 5147.04 | 5147.04 | 0.00 | 5147.04 | 100 |
| RFI-067 | 249.60 | 249.60 | 0.00 | 249.60 | 100 |
| New Kit Layout | 1255.59 | 1255.59 | 0.00 | 1255.59 | 100 |
| Canopy Lighting | 34279.45 | 12050.00 | 0.00 | 12050.00 | 35 |
| Outlets Receiving | 606.08 | 606.08 | 0 | 606.08 | 100 |
| Add Bldg Signage | 1437.79 | 1437.79 | 0 | 1437.79 | 100 |
| TOTALS | 418976.86 | 103727.41 | 137194.00 | 388794.41 | 92.7 |

PCI 000702

# Pinnacle Construction, Inc.
**2410 Azurite Ct., Suite B/ Anchorage, AK 99507**
**Phone 907-522-0040 / Fax 907-522-0041**

RECEIVED
JUN 2 8 2005
PINNACLE CONSTRUCTION

## Subcontractor Application for Payment / Lien Release

FOR OFFICE USE ONLY: Project Name: _____ Job No.: _____ Subcontract No.: 200470-21

Date: 6/28/05 Entered: ~~14530~~ 14656 GL #: 51500 Cost Code: _____

Category: Subcontractor PM Approval: _____

Subcontractor: DYNAMIC SYSTEMS INC.

Address: # 625 - 112c E HUFFMAN RD STE 2B ANCHORAGE AK 99575

Pay Request No.: 4   Date of Request: _____ Period: JUNE-1-05 To: JUNE-30-05

| | | | | |
|---|---|---|---|---|
| 1 | Original Contract Amount | $ 370,327.00 | $ | 1 |
| 2 | Approved Changes (Net) (Add / Deduct) as per attached | $ 48,649.86 | $ | 2 |
| 3 | Adjusted Contract Amount | $ 418,976.86 | $ | 3 |
| 4 | Value of work completed to date (92.7 % of line 3). | $ 388,794.41 | $ | 4 |
| 5 | Materials stored on site (subject to owner approval ) | $ 0 | $ | 5 |
| 6 | Total of lines 4 and 5. | $ 388,794.41 | $ | 6 |
| 7 | Less total amount previously requested | $ 285,067.00 | $ | 7 |
| 8 | Total amount requested this application. | $ 103,727.41 | $ | 8 |
| 9 | Special payment term ( Discount 0 %) | $ 0 | $ | 9 |
| 10 | Less Retainage this request ( 10 % of line 8 ) | $ 10,372.74 | $ | 10 |
| 11 | Total Retainage to date ( ____ % of line 6 ) | $ 38,879.44 | $ | 11 |
| 12 | NET AMOUNT DUE THIS REQUEST | $ 93,354.67 | $ | 12 |

Pd √ #17188  8/11/05  $93,354.67

CERTIFICATE OF THE SUBCONTRACTOR:

I hereby certify that the work performed and the materials supplied to date, as shown on the above, represent the actual value of accomplishment under the terms of the Contract (and all authorized changes there to) between the undersigned and Pinnacle Construction, Inc. relating to the above referenced project.

I also certify that payments, less applicable retention, have been made through the period covered by previous payments received from the contractor, to (1) all my subcontractors (sub subcontractors) and (2) for all materials, equipment rental and labor used in or in connection with performance of this Contract. I further certify I have complied with Federal, State and local tax laws, including Social Security, Unemployment Compensation, that all work performed and materials furnished have been provided without discrimination as to race, creed, color, notional origin, sex or age.

Furthermore, in consideration of the payments received, and upon receipt of the amount of this request, the undersigned does hereby waive, release and relinquish all claim or right of lien which the undersigned may now have upon the premises above described or against retainage or any bond except for claims or right of lien for contract and/or change order work performed to extent that payment is being retained or will subsequently become due and agree to hold Pinnacle Construction, Inc. harmless from any claim of lien by my subcontractors, suppliers, equipment rental or labor.

Date: JUNE 28 2005                    JUNE-28-05

Subscribed and sworn before me this day of 2    Subcontractor DYNAMIC SYSTEMS INC.

JUNE          200 5          By (Authorized Signature) _____

Notary Public: Byron Turner    Title: SEC/TRES          ANDREW BUCK

My Commission Expires: √ JUNE 28, _____

*(Notary seal: BYRON TURNER, NOTARY PUBLIC, STATE OF ALASKA, Commission Expires Jun 28, 2006)*

PCI 000703

PINNACLE CONSTRUCTION INC.                                             17188

Check#:  17188          Date: 08/11/2005     Amount: 93,354.67      Vendor: 626 Dynamic Systems, Inc.

| Invoice# | Description | Balance | Discount | This Check |
|----------|-------------|---------|----------|------------|
| FRMM P/R #4 | FRMM P/R #4, Jun 05 | 103,727.41 | | 93,354.67 |

PRODUCT LM102    USE WITH 9380 ENVELOPE        NEBS  To Reorder: 1-800-225-6380 or www.nebs.com        PRINTED IN U.S.A.

0214

PCI 000704

DYNAMIC SYSTEMS INC.

# Invoice

1120 E Huffman Rd Ste23  #625
Anchorage, Alaska 99515-3561

| Date | Invoice # |
|------|-----------|
| 8/7/2005 | AK1293 |

| Bill To |
|---------|
| Pinnacle Construction Inc.<br>4141 Ingra St.<br>Anchorage, Alaska 99503 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
|  |  |  |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Invoice for the Release of the Holdback Money | 41,413.41 | 41,413.41 |

*Not an Invoice*

| | Total | $41,413.41 |
|--|-------|-----------|

PCI 000705

09/32/2005  10:15    907-522-0041    PINNACLE CONSTR    PAGE  02

## Pinnacle Construction, Inc.

**4141 Ingra St., #200 / Anchorage, AK  99503**
**Phone 907-522-0040 / Fax 907-522-0041**

RECEIVED

SEP 1 5 2005

PINNACLE CONSTRUCTION

### Subcontractor Application for Payment / Lien Release

FOR OFFICE USE ONLY: Project Name: Ft. Rich Mini Mall Job No: 4-70 Subcontract No.: 200470-7

Date: _____ Entered: _____ GL #: _____ Cost Code: 16050

Category: Subcontractor  PM Approval: _____

Subcontractor: Dynamic Systems, Inc.

Address: 625-1120 E. Huffman Rd, #23      Anchorage, AK 99515

Pay Request No.: _R1_   Date of Request: 08/30/05   Period: _____   To: _____

| # | | Amount | | # |
|---|---|---|---|---|
| 1 | Original Contract Amount | $370,327.00 | $ | 1 |
| 2 | Approved Changes (Net) (Add / Deduct) as per attached | $ 48,629.86 | $ | 2 |
| 3 | Adjusted Contract Amount to date | $418,976.86 | $ | 3 |
| 4 | Value of work completed as of Pay Request #4 | $388,794.41 | $ | 4 |
| 5 | Materials stored on site (subject to owner approval ) | $--0-- | $ | 5 |
| 6 | Total of lines 4 and 5. | $388,794.41 | $ | 6 |
| 7 | Less total amount previously requested | $388,794.41 | $ | 7 |
| 8 | Total amount requested this application. | $--0-- | $ | 8 |
| 9 | Special payment term ( Discount _____% ) | $--0-- | $ | 9 |
| 10 | Less Retainage this request ( _0_ % of line 8 ) | $--0-- | $ | 10 |
| 11 | Total Retainage held to date ( _5_ % of line 6 ) | $ 19,439.72 | $ | 11 |
| 12 | NET AMOUNT DUE THIS REQUEST-50% Retention Release | $ 19,439.72 | $ | 12 |

Pd ✓#17346  8|30|05   $19,439.72

CERTIFICATE OF THE SUBCONTRACTOR:

I hereby certify that the work performed and the materials supplied to date, as shown on the above, represent the actual value of accomplishment under the terms of the Contract (and all authorized changes there to) between the undersigned and Pinnacle Construction, Inc. relating to the above referenced project.

I also certify that payments, less applicable retention, have been made through the period covered by previous payments received from the contractor, to (1) all my subcontractors (sub subcontractors) and (2) for all materials, equipment rental and labor used in or in connection with performance of this Contract. I further certify I have complied with Federal, State and local tax laws, including Social Security, Unemployment Compensation, that all work performed and materials furnished have been provided without discrimination as to race, creed, color, national origin, sex or age.

Furthermore, in consideration of the payments received, and upon receipt of the amount of this request, the undersigned does hereby waive, release and relinquish all claim or right of lien which the undersigned may now have upon the premises above described or against retainage or any bond except for claims or right of lien for contract and/or change order work performed to extent that payment is being retained or will subsequently become due and agree to hold Pinnacle Construction, Inc. harmless from any claim of lien by my subcontractors, suppliers, equipment rental or labor.

Date: September 13, 2005

Subscribed and sworn before me this day of 13

September 2005

Notary Public: Byron ____

My Commission Expires: June 28, 2006

Date SEPT-13-05

Subcontractor DYNAMIC SYS INC.

By (Authorized Signature) _____ ANDREW BUEL

Title VICE PREC/TRES.

BYRON TURNER
NOTARY
Commission Expires
Jun 28, 2006
PUBLIC
STATE OF ALASKA

PCI 000706

PINNACLE CONSTRUCTION INC.

17346

| Check#: 17346 | Date: 08/30/2005 | | Amount: 19,439.72 | Vendor: 626 Dynamic Systems, Inc. | |
|---|---|---|---|---|---|
| invoice# | Description | | Balance | Discount | This Check |
| FRMM PR #1 | FRMM PR #1 - Mar 05 | | 2,222.80 | | 1,111.40 |
| FRMM P/R #2 | FRMM P/R #2 April 05 | | 12,564.50 | | 6,282.25 |
| FRMM P/R #3 | FRMM P/R #3, May 05 | | 13,719.40 | | 6,859.70 |
| FRMM P/R #4 | FRMM P/R #4, Jun 05 | | 10,372.74 | | 5,186.37 |

^ PCI 000707

DYNAMIC SYSTEMS INC.

# Invoice

1120 E Huffman Rd Ste23 #625
Anchorage, Alaska 99515-3561

| Date | Invoice # |
|------|-----------|
| 8/7/2005 | AK1292 |

| Bill To |
|---------|
| Pinnacle Construction Inc.<br>4141 Ingra St.<br>Anchorage, Alaska 99503 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
|          |       |         |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Progress Claim for Completion of the Electrical Portion of the Fort Richardson Mini Mall Project<br><br>#5 | 22,805.68 | 22,805.68 |

FROM P/R #5  200470-21
DATE 9/26/05   ENTERED 15686
JOB/GL# 2004-70  PHASE #
16050 S
less 5% retainage — 1140.28 = 21,665.40
APPROVED  MSP

| | Total | $22,805.68 |

#5

# DYNAMIC SYSTEMS INC.

| MONTHLY PROGRESS CLAIM | | | | 7-Aug | |
|---|---|---|---|---|---|
| PROJECT: Fort Richardson Mini Mall | | | | | |
| ITEM | AMOUNT | THIS PERIOD | PREVIOUS | TO DATE | % COMPLETE |
| Fuel Sys Elect | 79525.00 | 7953.00 | 35103.00 | 79525.00 | 100 |
| Bldg Rough-in | 128681.00 | 0.00 | 6434.00 | 128681.00 | 100 |
| Lighting | 54424.00 | 0.00 | 8164.00 | 54424.00 | 100 |
| Site Lighting | 43857.00 | 0.00 | 6579.00 | 43857.00 | 100 |
| Tel/Comm | 37484.00 | 0.00 | 13120.00 | 37484.00 | 100 |
| Elect Trim | 26356.00 | 0.00 | 7907.00 | 26356.00 | 100 |
| Add TV and Pwr | 1663.89 | 0.00 | 1663.89 | 1663.89 | 100 |
| Bailer Relocate | 657.38 | 0.00 | 657.38 | 657.38 | 100 |
| ESK-2/E3.1 | 1962.72 | 0.00 | 1962.72 | 1962.72 | 100 |
| ESK-3/E3.1 | 1819.46 | 0.00 | 1819.46 | 1819.46 | 100 |
| ESK-4/E3.1 | -429.14 | 0.00 | -429.14 | -429.14 | 100 |
| ESK-5/E6.1 | 5147.04 | 0.00 | 5147.04 | 5147.04 | 100 |
| RFI-067 | 249.60 | 0.00 | 249.60 | 249.60 | 100 |
| New Kit Layout | 1255.59 | 0.00 | 1255.59 | 1255.59 | 100 |
| Canopy Lighting | 34279.45 | 22229.45 | 12050.00 | 34279.45 | 100 |
| Outlets Receiving | 606.08 | 0 | 606.08 | 606.08 | 100 |
| Duct Bank Delet | -5466.42 | -5466.42 | 0 | -5466.42 | 100 |
| Delete Road Sign | -1221.37 | -1221.37 | 0 | -1221.37 | 100 |
| AHU 2 Feeder | 4861.62 | 4861.62 | 0 | 4861.62 | 100 |
| T&T Copper/Fibe | 4406.57 | 4406.57 | 0 | 4406.57 | 100 |
| Pinnacle Fixture | -7423.2 | -7423.2 | 0 | -7423.2 | 100 |
| Add Bldg Signage | 1437.79 | 0 | 1437.79 | 1437.79 | 100 |
| TOTALS | 414134.06 | 25339.65 | 103727.41 | 414134.06 | 100 |

PCI 000709

# Pinnacle Construction, Inc.
### 4141 Ingra St., #200 / Anchorage, AK 99503
### Phone 907-522-0040 / Fax 907-522-0041

### Subcontractor Application for Payment / Lien Release

**FOR OFFICE USE ONLY:** Project Name: Ft. Rich Mini Mall Job No: 4-70 Subcontract No.: _200470-7_

Date: _____ Entered: _____ GL #: _____ Cost Code: _16050_____

Category: Subcontractor   PM Approval: _____

Subcontractor: Dynamic Systems, Inc.

Address: 625-1120 E. Huffman Rd, #23       Anchorage, AK 99515

Pay Request No.: _5_    Date of Request: 08/07/05    Period: 7/1/05    To: 8/7/05

| | | | | |
|---|---|---|---|---|
| 1 | Original Contract Amount | $370,327.00 | $ | 1 |
| 2 | Approved Changes (Net) (Add / Deduct) as per attached | $ 43,807.06 | $ | 2 |
| 3 | Adjusted Contract Amount to date | $414,134.06 | $ | 3 |
| 4 | Value of work completed as of Pay Request #4 | $414,134.06 | $ | 4 |
| 5 | Materials stored on site (subject to owner approval ) | $—0— | $ | 5 |
| 6 | Total of lines 4 and 5. | $411,600.09 | $ 414,134.06 | 6 |
| 7 | Less total amount previously requested | $388,794.41 | $ | 7 |
| 8 | Total amount requested this application. | $ 22,805.68 | $ | 8 |
| 9 | Special payment term ( Discount _____% ) | $—0— | $ | 9 |
| 10 | Less Retainage this request ( _0_ % of line 8 ) | $ 1,140.28 | $ | 10 |
| 11 | Total Retainage held to date ( _5_ % of line 6 ) | $ 20,580.00 | $ | 11 |
| 12 | NET AMOUNT DUE THIS REQUEST-50% Retention Release | $ 21,655.40 | $ | 12 |

Pd √# 17651   10/11/05   $ 21,665.40

### CERTIFICATE OF THE SUBCONTRACTOR:

I hereby certify that the work performed and the materials supplied to date, as shown on the above, represent the actual value of accomplishment under the terms of the Contract (and all authorized changes there to) between the undersigned and Pinnacle Construction, Inc. relating to the above referenced project.

I also certify that payments, less applicable retention, have been made through the period covered by previous payments received from the contractor, to (1) all my subcontractors (sub subcontractors) and (2) for all materials, equipment rental and labor used in or in connection with performance of this Contract. I further certify that I have complied with Federal, State and local tax laws, including Social Security, Unemployment Compensation, that all work performed and materials furnished have been provided without discrimination as to race, creed, color, national origin, sex or age.

Furthermore, in consideration of the payments received, and upon receipt of the amount of this request, the undersigned does hereby waive, release and relinquish all claim or right of lien which the undersigned may now have upon the premises above described or against retainage or any bond except for claims or right of lien for contract and/or change order work performed to extent that payment is being retained or will subsequently become due and agree to hold Pinnacle Construction, Inc. harmless from any claim of lien by my subcontractors, suppliers, equipment rental or labor.

Date: October 20, 2005      Date OCTOBER - 10 - 2005

Subscribed and sworn before me this day of 20      Subcontractor DYNAMIC SYSTEMS INC
October      200 5      By (Authorized Signature) _____

Notary Public: Byron Yu      Title SEC / TRES.

My Commission Expires: June 28 2006

PCI 000710

PINNACLE CONSTRUCTION INC.

17651

Check#:  17651          Date: 10/11/2005     Amount: 21,665.40     Vendor: 626 Dynamic Systems, Inc.

| Invoice# | Description | Balance | Discount | This Check |
|---|---|---|---|---|
| FRMM P/R #5 | FRMM P/R #5 | 22,805.68 | | 21,665.40 |

PRODUCT LM102    USE WITH 9380 ENVELOPE    NEBS  To Reorder: 1-800-225-6380 or www.nebs.com    PRINTED IN U.S.A.



PCI 000711

Ft. Rich Mini Mall Project,
Ft. Richardson, AK
Project 2004-70

Name: Dynamic Systems, Inc.
Pay application # CO P/R # 6
Date: 8/7/05

Application for Payment

Schedule of Values

| Description | Scheduled | Changes | Contract | Previous | Current Comp. | Total Comp. | % Comp. | Balance | Retained |
|---|---|---|---|---|---|---|---|---|---|
| Pending change orders | | | | | | | | | |
| Remove & reinstall Comm | | 3,281.72 | 3,281.72 | | 3,281.72 | 3,281.72 | 100% | 0.00 | 164.09 |
| Power for FC ice machine | | 792.10 | 792.10 | | 792.10 | 792.10 | 100% | 0.00 | 39.61 |
| Modifications for SBY equip | | 513.91 | 513.91 | | 513.91 | 513.91 | 100% | 0.00 | 25.70 |
| Power for SHP ice machine | | 1,846.40 | 1,846.40 | | 1,846.40 | 1,846.40 | 100% | 0.00 | 92.32 |
| Mods for GF equipment | | 571.83 | 571.83 | | 571.83 | 571.83 | 100% | 0.00 | 28.59 |
| Ice machine for snack ave. | | 375.13 | 375.13 | | 375.13 | 375.13 | 100% | 0.00 | 18.76 |
| Signs at FC counters | | 291.72 | 291.72 | | 291.72 | 291.72 | 100% | 0.00 | 14.59 |
| | | | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 |
| | | | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 |
| | | | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 |
| | | | | | | | | | 0.00 |
| | | | | | | | | | 0.00 |
| | | | | | | | | | 0.00 |
| | | | | | | | | | 0.00 |
| | | | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 |
| | | | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 |
| | | | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 |
| | | | | | | | | | 0.00 |
| | | | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 |
| | | | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 |
| | | | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 |
| Total | | 0.00 | 7,672.81 | 0.00 | 7,672.81 | 7,672.81 | | 0.00 | 383.64 |

Less Retainage    5%    -383.64

Total due this pay application    7,289.17

FRHM P/R#6 - CO  2004-70-21
DATE _____  ENTERED  15687
JOB/GL# 2004-70  PHASE #
16050.5
Renen Stolie
APPROVED  WH

DYNAMIC SYSTEMS INC.

**Invoice**

1120 E Huffman Rd Ste23  #625
Anchorage, Alaska 99515-3561

| Date | Invoice # |
|------|-----------|
| 8/7/2005 | AK1294 |

| Bill To |
|---------|
| Pinnacle Construction Inc.<br>4141 Ingra St.<br>Anchorage, Alaska 99503 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
| Fort Richardson | | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Advanced Data and Fiber charges to remove and reinstall fiber and copper into the Fort Richardson Mini Mall | 3,281.72 | 3,281.72 |

| | **Total** | $3,281.72 |
|--|-----------|-----------|

PCI 000713

DYNAMIC SYSTEMS INC.

# Invoice

1120 E Huffman Rd Ste23 #625
Anchorage, Alaska 99515-3561

| Date | Invoice # |
|------|-----------|
| 8/7/2005 | AK1295 |

| Bill To |
|---------|
| Pinnacle Construction Inc.<br>4141 Ingra St.<br>Anchorage, Alaska 99503 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
| Fort Richardson | | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Material required to provide power to two Ice Makers that sit on soda machines, food court side. | 252.10 | 252.10 |
| 7.5 | Labor | 72.00 | 540.00 |

| | Total | $792.10 |
|--|-------|---------|

PCI 000714

DYNAMIC SYSTEMS INC.

# Invoice

1120 E Huffman Rd Ste23  #625
Anchorage, Alaska 99515-3561

| Date | Invoice # |
|------|-----------|
| 8/7/2005 | AK1296 |

| Bill To |
|---------|
| Pinnacle Construction Inc.<br>4141 Ingra St.<br>Anchorage, Alaska 99503 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
| Fort Richardson | | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Material required at the Subway kitchen to make wiring match equipment supplied, which was different to what the drawings had shown. | 153.91 | 153.91 |
| 5 | Labor | 72.00 | 360.00 |

| | Total | $513.91 |
|---|-------|---------|

DYNAMIC SYSTEMS INC.

# Invoice

1120 E Huffman Rd Ste23 #625
Anchorage, Alaska 99515-3561

| Date | Invoice # |
|------|-----------|
| 8/7/2005 | AK1297 |

| Bill To |
|---------|
| Pinnacle Construction Inc.<br>4141 Ingra St.<br>Anchorage, Alaska 99503 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
| Fort Richardson | | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Materials required to connect large Ice Maker located in the back of the Shopette. Unit requires 50 amp/ three phase power. | 622.40 | 622.40 |
| 17 | Labor | 72.00 | 1,224.00 |

| | Total | $1,846.40 |
|--|-------|-----------|

PCI 000716

DYNAMIC SYSTEMS INC.

# Invoice

1120 E Huffman Rd Ste23 #625
Anchorage, Alaska 99515-3561

| Date | Invoice # |
|------|-----------|
| 8/7/2005 | AK1298 |

| Bill To |
|---------|
| Pinnacle Construction Inc.<br>4141 Ingra St.<br>Anchorage, Alaska 99503 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
| Fort Richardson | | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Material required at Godfather's kitchen to make wiring match equipment supplied, which was different to what the drawings had shown. | 67.83 | 67.83 |
| 7 | Labor | 72.00 | 504.00 |

| | Total | $571.83 |
|--|-------|---------|

PCI 000717

DYNAMIC SYSTEMS INC.

# Invoice

1120 E Huffman Rd Ste23  #625
Anchorage, Alaska 99515-3561

| Date | Invoice # |
|------|-----------|
| 8/7/2005 | AK1299 |

| Bill To |
|---------|
| Pinnacle Construction Inc.<br>4141 Ingra St.<br>Anchorage, Alaska 99503 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
| Fort Richardson | | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Material required to wire Ice Maker on soda machine at Shopette food counter. | 87.13 | 87.13 |
| 4 | Labor | 72.00 | 288.00 |

| | Total | $375.13 |
|--|-------|---------|

PCI 000718

DYNAMIC SYSTEMS INC.

# Invoice

1120 E Huffman Rd Ste23  #625
Anchorage, Alaska 99515-3561

| Date | Invoice # |
|------|-----------|
| 8/7/2005 | AK1300 |

| Bill To |
|---------|
| Pinnacle Construction Inc.<br>4141 Ingra St.<br>Anchorage, Alaska 99503 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
| Fort Richardson | | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Material required to power two signs above the food court counter within the Shopette. | 75.72 | 75.72 |
| 3 | Labor | 72.00 | 216.00 |

| | Total | $291.72 |
|---|-------|---------|

Waiver and Release of Lien

Submitted to: Pinnacle Construction, Inc.
                 4141 Ingra Street, Suite 200
                 Anchorage, AK 99503

Submitted from: Dynamic Systems, Inc.
                  625-1120 E. Huffman Rd # 23
                  Anchorage, AK 99515

Project:  Ft. Richardson Mini Mall
             Ft. Richardson, AK
Project # 2005-54

Application for Payment # Retainage & Balance
Application date: _____
Period ending: _____

**Payment Amount:** _____ 0.00

Less 10% Retainage: _____ 0.00

Net Payment: _____ $28,252.81
                  Paid in Full

CERTIFICATE OF THE SUBCONTRACTOR:

I hereby certify that the work performed and the materials supplied to date, as shown on the above, represent the actual value of accomplishment under the terms of the Contract (and all authorized changes there to) between the undersigned and Pinnacle Construction, Inc. relating to the above referenced project.

I also certify that payments, less applicable retention, have been made through the period covered by previous payments received from the contractor, to (1) all my subcontractors (sub subcontractors) and (2) for all materials, equipment rental and labor used in or in connection with performance of this Contract. I further certify I have complied with Federal, State and local tax laws, including Social Security, Unemployment Compensation, that all work performed and materials furnished have been provided without discrimination as to race, creed, color, national origin, sex or age.

Furthermore, in consideration of the payments received, and upon receipt of the amount of this request, the undersigned does hereby waive, release and relinquish all claim or right of lien which the undersigned may now have upon the premises above described or against retainage or any bond except for claims or right of lien for contract and/or change order work performed to extent that payment is being retained or will subsequently become due and agree to hold Pinnacle Construction, Inc. harmless from any claim of lien by my subcontractors, suppliers, equipment rental or labor.

Date: _____ 1st _____

Subscribed and sworn before me this day of Feb

_____ 200 6

Notary Public: Marlene Stengel

My Commission Expires: 22 May 2008

Date: FEB - 01 - 06.

Subcontractor: DYNAMIC SYSTEMS INC.

                  ANDREW Buck.
                  Authorized Signature

Title: SEC / TRES.

State of Alaska
NOTARY PUBLIC
Marlene Stengel
My Commission Expires May 22, 2008

PINNACLE CONSTRUCTION INC.

| Check#: 18236 | Date: 01/30/2006 | Amount: 28,252.81 | Vendor: 626 Dynamic Systems, Inc. |
|---|---|---|---|

| Invoice# | Description | Balance | Discount | This Check |
|---|---|---|---|---|
| FRMM PR #1 | FRMM PR #1 - Mar 05 | 1,111.40 | | 1,111.40 |
| FRMM P/R #2 | FRMM P/R #2 April 05 | 6,282.25 | | 6,282.25 |
| FRMM P/R #3 | FRMM P/R #3, May 05 | 6,859.70 | | 6,859.70 |
| FRMM P/R #4 | FRMM P/R #4, Jun 05 | 5,186.37 | | 5,186.37 |
| FRMM P/R #5 | FRMM P/R #5 | 1,140.28 | | 1,140.28 |
| FRMM P/R #6 CO | FRMM P/R #6 CO | 7,672.81 | | 7,672.81 |

PRODUCT LM102    USE WITH 9380 ENVELOPE    NEBS  To Reorder: 1-800-225-6380 or www.nebs.com    PRINTED IN U.S.A.    A

| Check#: | 18330 | Date: 02/20/2006 | Amount: 6,266.22 | Vendor: | 626 Dynamic Systems, Inc. |

| Invoice# | Description | Balance | Discount | This Check |
|---|---|---|---|---|
| Final C/O | Final-Crct PR#5 and COs | 6,266.22 | | 6,266.22 |

PAID IN FULL.

PRODUCT LM102     USE WITH 9380 ENVELOPE     NEBS  To Reorder: 1-800-225-6380 or www.nebs.com     PRINTED IN U.S.A.     A

*E-Mailed 421*

## Waiver and Release of Lien

Submitted to: Pinnacle Construction, Inc.
4141 Ingra Street, Suite 200
Anchorage, AK 99503

Submitted from: Dynamic Systems, Inc.
625-1120 E. Huffman Rd # 23
Anchorage, AK 99515

Project:  Ft. Richardson Mini Mall
Ft. Richardson, AK
Project # 2005-54

Application for Payment #  5 & AK1303-AK1312
Application date: _____
Period ending: _____

**Payment Amount:**        0.00

Less 10% Retainage:        0.00

Net Payment:    $6,266.22
Paid in Full

CERTIFICATE OF THE SUBCONTRACTOR:

I hereby certify that the work performed and the materials supplied to date, as shown on the above, represent the actual value of accomplishment under the terms of the Contract (and all authorized changes there to) between the undersigned and Pinnacle Construction, Inc. relating to the above referenced project.

I also certify that payments, less applicable retention, have been made through the period covered by previous payments received from the contractor, to (1) all my subcontractors (sub subcontractors) and (2) for all materials, equipment rental and labor used in or in connection with performance of this Contract. I further certify I have complied with Federal, State and local tax laws, including Social Security, Unemployment Compensation, that all work performed and materials furnished have been provided without discrimination as to race, creed, color, national origin, sex or age.

Furthermore, in consideration of the payments received, and upon receipt of the amount of this request, the undersigned does hereby waive, release and relinquish all claim or right of lien which the undersigned may now have upon the premises above described or against retainage or any bond except for claims or right of lien for contract and/or change order work performed to extent that payment is being retained or will subsequently become due and agree to hold Pinnacle Construction, Inc. harmless from any claim of lien by my subcontractors, suppliers, equipment rental or labor.

Date: _____

Subscribed and sworn before me this day of  21
*February*        200 6
Notary Public: *Marlene Stengel*
My Commission Expires: 22 May 2008

Date: 2-21-06

Subcontractor: DYNAMIC SYSTEMS INC.
        ANDREW Buck    SEC/TRES.
        Authorized Signature

Title: SEC/TRES.

State of Alaska
NOTARY PUBLIC
Marlene Stengel
My Commission Expires May 22, 2008

PCI 000723

Application for Payment

Schedule of Values

Ft. Rich Mini Mall Project,
Ft. Richardson, AK
Project 2004-70

Name:Dymanic Systems, Inc.
Final Pay Application    Correction to Pay App #5 (retainage taken twice) and missed change orders as part of PCI CO #30
Date: 8/25/05

| Inv. # | Description | Scheduled | Changes | Contract | Previous | Current Comp. | Total Comp. | % Comp. | Balance | Retained |
|---|---|---|---|---|---|---|---|---|---|---|
| | Final Pay Application Corrections | | | | | | | | | |
| | Correction to Pay App #5 | | 2,533.97 | 2,533.97 | | 2,533.97 | 2,533.97 | 100% | 0.00 | 0.00 |
| | | | | 0.00 | | 0.00 | 0.00 | 100% | 0.00 | 0.00 |
| AK1303 | Add smoke det in Mech rm | | 337.25 | 337.25 | | 337.25 | 337.25 | 100% | 0.00 | 0.00 |
| AK1304 | Move pwr for signage | | 379.00 | 379.00 | | 379.00 | 379.00 | 100% | 0.00 | 0.00 |
| AK1305 | Power for display snack ave | | 591.00 | 591.00 | | 591.00 | 591.00 | 100% | 0.00 | 0.00 |
| AK1306 | Outlet abover roll-up grille | | 120.00 | 120.00 | | 120.00 | 120.00 | 100% | 0.00 | 0.00 |
| AK1307 | Circuit for pizza oven | | 485.00 | 485.00 | | 485.00 | 485.00 | 100% | 0.00 | 0.00 |
| AK1308 | Circuit for GF Counter | | 455.00 | 455.00 | | 455.00 | 455.00 | 100% | 0.00 | 0.00 |
| AK1309 | Circuit for SBY Cooler | | 126.00 | 126.00 | | 126.00 | 126.00 | 100% | 0.00 | 0.00 |
| AK1310 | Outlet wiring to Office | | 230.00 | 230.00 | | 230.00 | 230.00 | 100% | 0.00 | 0.00 |
| AK1311 | Outlet for microwave | | 554.00 | 554.00 | | 554.00 | 554.00 | 100% | 0.00 | 0.00 |
| AK1312 | Reconnect Building signs | | 455.00 | 455.00 | | 455.00 | 455.00 | 100% | 0.00 | 0.00 |
| | | | | | | | | | | |
| | | | | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 |
| | | | | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 |
| | | | | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 |
| | | | | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 |
| | | | | | | | | | | |
| | | | | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 |
| | | | | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 |
| | | | | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 |
| | | | | 0.00 | | 0.00 | 0.00 | | 0.00 | 0.00 |
| | Total | 0.00 | | 6,266.22 | 0.00 | 6,266.22 | 6,266.22 | | 0.00 | 0.00 |

Less Retainage    0%    0.00

Total due this pay application    6,266.22



DYNAMIC SYSTEMS INC.

2/1/2006

Register: Accounts Receivable
From: 04/01/2005 through 02/01/2006
Sorted by: Date, Type, Number/Ref

| Date | Number | Customer | Memo/Description | Qty | Rate | Charge | Paid | Balance |
|------|--------|----------|-----------------|-----|------|--------|------|---------|
| 04/02/2005 | AK1255 | Pinnacle Constructi... | | | | 20,005.20 | | 20,005.20 |
| 04/25/2005 | AK1258 | Pinnacle Constructi... | | | | 113,080.50 | | 133,085.70 |
| 05/02/2005 | AK1260 | Pinnacle Constructi... | | | | 895.00 | | 133,980.70 |
| 05/09/2005 | AK1263 | Pinnacle Constructi... | | | | 1,960.00 | | 135,940.70 |
| 05/20/2005 | AK1265 | Pinnacle Constructi... | | | | 895.00 | | 136,835.70 |
| 05/25/2005 | AK1268 | Pinnacle Constructi... | | | | 123,474.60 | | 260,310.30 |
| 05/27/2005 | | Pinnacle Constructi... | | | | | 136,835.70 | 123,474.60 |
| 05/27/2005 | AK1272 | Pinnacle Constructi... | | | | 1,790.00 | | 125,264.60 |
| 06/24/2005 | AK1281 | Pinnacle Constructi... | | | | 93,354.67 | | 218,619.27 |
| 06/27/2005 | | Pinnacle Constructi... | | | | | 1,790.00 | 216,829.27 |
| 07/08/2005 | | Pinnacle Constructi.. | | | | | 123,474.60 | 93,354.67 |
| 08/07/2005 | AK1292 | Pinnacle Constructi... | | | | 22,805.68 | | 116,160.35 |
| 08/07/2005 | AK1293 | Pinnacle Constructi... | | | | 41,413.41 | | 157,573.76 |
| 08/07/2005 | AK1294 | Pinnacle Constructi.. | | | | 3,281.72✓ | | 160,855.48 |
| 08/07/2005 | AK1295 | Pinnacle Constructi... | | | | 792.10 | | 161,647.58 |
| 08/07/2005 | AK1296 | Pinnacle Constructi... | | | | 513.91 | | 162,161.49 |
| 08/07/2005 | AK1297 | Pinnacle Constructi... | | | | 1,846.40✓ | | 164,007.89 |
| 08/07/2005 | AK1298 | Pinnacle Constructi... | | | | 571.83✓ | | 164,579.72 |
| 08/07/2005 | AK1299 | Pinnacle Constructi... | | | | 375.13✓ | | 164,954.85 |
| 08/07/2005 | AK1300 | Pinnacle Constructi... | | | | 291.72✓ | | 165,246.57 |
| 08/15/2005 | | Pinnacle Constructi... | | | | | 93,354.67 | 71,891.90 |
| 08/25/2005 | AK1303 | Pinnacle Constructi... | | | | 337.25✓ | | 72,229.15 |
| 08/25/2005 | AK1304 | Pinnacle Constructi... | | | | 379.00✓ | | 72,608.15 |
| 08/25/2005 | AK1305 | Pinnacle Constructi... | | | | 591.00✓ | | 73,199.15 |
| 08/25/2005 | AK1306 | Pinnacle Constructi... | | | | 120.00✓ | | 73,319.15 |
| 08/25/2005 | AK1307 | Pinnacle Constructi... | | | | 485.00✓ | | 73,804.15 |
| 08/25/2005 | AK1308 | Pinnacle Constructi... | | | | 455.00✓ | | 74,259.15 |
| 08/25/2005 | AK1309 | Pinnacle Constructi... | | | | 126.00✓ | | 74,385.15 |
| 08/25/2005 | AK1310 | Pinnacle Constructi... | | | | 230.00✓ | | 74,615.15 |
| 08/25/2005 | AK1311 | Pinnacle Constructi... | | | | 554.00✓ | | 75,169.15 |
| 08/25/2005 | AK1312 | Pinnacle Constructi... | | | | 455.00✓ | | 75,624.15 |
| 09/13/2005 | | Pinnacle Constructi... | | | | | 19,439.72 | 56,184.43 |
| 10/20/2005 | | Pinnacle Constructi... | | | | | 21,665.40 | 34,519.03 |
| 02/01/2006 | | Pinnacle Constructi... | | | | | 28,252.81 | 6,266.22 |

424,812.90

PR#5   2,533.47

Invoice 1303   3,132.25
1312

Page 1

430

431,079.12
< 5,540.00 > Lifts

428,562.90

425,539.12

PINNACLE CONSTRUCTION INC.                                              16624

Check#: **16624**        ` **Date: 05/24/2005**    **Amount: 895.00**        Vendor: **626 Dynamic Systems, Inc.**

| Invoice# | Description | Balance | Discount | This Check |
|----------|-------------|---------|----------|------------|
| AK1260 | Inv AK 1260 | 895.00 | | 895.00 |

PCI 000726

0878

**DYNAMIC SYSTEMS INC.**

1120 E Huffman Rd Ste23 #625
Anchorage, Alaska 99515-3561

RECEIVED
MAY – 2 2005
PINNACLE CONSTRUCTION

# Invoice

| Date | Invoice # |
|------|-----------|
| 5/2/2005 | AK1260 |

| Bill To |
|---------|
| Pinnacle Construction Inc.<br>4141 Ingra St.<br>Anchorage, Alaska 99503 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
| Fort Richardson Mi... | | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Lift Rental GS1930 SN 51063 | 895.00 | 895.00 |

DATE  5/23/05   ENTERED  1405(
JOB/GL#          PHASE #
200470
16050  ⌊S
APPROVED   MW

| | Total | $895.00 |
|--|-------|---------|

PCI 000727

```
***********************
*  AIRPORT EQUIPMENT RENTAL  *
*  10460 OLD SEWARD HIGHWAY  *
*    ANCHORAGE, AK 99515     *
*      907-333-4365          *
***********************
```

| Customer ID | | Contract Number |
|---|---|---|
| 340231 | REVISED RENTAL CONTRACT | 02-025171-02 |

04/26/05

DYNAMIC SYSTEMS, INC.
625-1120 E. HUFFMAN ROAD
SUITE 23
ANCHORAGE, AK  99515

DYNAMIC SYSTEMS, INC.
625-1120 E. HUFFMAN ROAD
SUITE 23
ANCHORAGE, AK  99515

907-344-1846

PAID WITH CREDIT CARD
46323

Out: MON 03/28/05 08:00
Revised: TUE 04/26/05 14:57
Due: MON 04/25/05 08:00

| Item No. | Qty | Description | Rate Info | | Unit | Extended |
|---|---|---|---|---|---|---|
| 0112-0060 | 1.0 | GENIE GS1930 | FY | 125.00 | 895.00 | 895.00 |
| 21-0130 | | 2002 GS1930 SN 31063 | | | | |
| Meter: | 0.0 | 205.6=out  205.6=in /xxxx | | | 0.000 | 0.00 |
| 1100-0000 | 1.0 | D/P1C KENWORTH/TRAIL 50T DELIVERY PICKUP 4995 | | 0.00 | 0.00 |

| Receipts Summary | | | | Summary | |
|---|---|---|---|---|---|
| Date | Beg Method | Ref/PO | Amount | H/EQUIPMENT RENTAL | 895.00 |
| 04/26/05 02 Paid | VISA | 895.00 | Total | 895.00 |

I, the undersigned renter, specifically acknowledge that I have received and understand the instructions regarding the use and operation of the rented equipment.

Renter further acknowledges that he has read and fully understands the within equipment rental contract and agrees to be bound by all of the terms, conditions and provisions hereof. Renter acknowledges that he has received a true and correct copy of this agreement at the time of execution hereof.

I accept/decline the damage waiver, as provided on the reverse side and agree to pay the above described additional charges therefor.

IF DECLINED PLEASE INITIAL

RETURN EQUIPMENT BY:    MON 04/25/05 08:00

X _____

SIGNATURE    PCI 000728

THIS IS YOUR CONTRACT, READ BOTH SIDES BEFORE SIGNING

Check#:  16640          Date: 05/25/2005      Amount: 135,940.70    Vendor: 626 Dynamic Systems, Inc.

| Invoice# | Description | Balance | Discount | This Check |
|----------|-------------|---------|----------|------------|
| FRMM PR #1 | FRMM PR #1 - Mar 05 | 22,228.00 | | 20,005.20 |
| FRMM P/R #2 | FRMM P/R #2 April 05 | 125,645.00 | | 113,080.50 |
| AK1263 | Inv AK1263 | 1,960.00 | | 1,960.00 |
| AK 1265 | Inv AK 1265 | 895.00 | | 895.00 |

IODUCT LM 102      USE WITH 9380 ENVELOPE          NEBS  To Reorder: 1-800-225-6380 or www.nebs.com          PRINTED IN U.S.A.

DYNAMIC SYSTEMS INC.

# Invoice

1120 E Huffman Rd Ste23 #625
Anchorage, Alaska 99515-3561

| Date | Invoice # |
|------|-----------|
| 5/9/2005 | AK1263 |

| Bill To |
|---------|
| Pinnacle Construction Inc.<br>4141 Ingra St.<br>Anchorage, Alaska 99503 |

RECEIVED

MAY - 9 2005

PINNACLE CONSTRUCTIO

| P.O. No. | Terms | Project |
|----------|-------|---------|
| Fort Richardson | | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Man lift # 51063 | 895.00 | 895.00 |
| 1 | Man lift # 51074 | 1,065.00 | 1,065.00 |

DATE 5/8/05  ENTERED 14039 / 13986
JOB/GL# 2004-70  PHASE #
1650 2 S
APPROVED

| | Total | $1,960.00 |
|--|-------|-----------|